[L. A. No. 1267.   Department Two.—August 16, 1904.]

## C. Q. PIERCE, Appellant, v. T. P. LUKENS, Respondent.

SALE OF BONDS—AGREEMENT TO REPURCHASE—WAIVER OF TENDER—ESTOPPEL.—Where the defendant, to induce the plaintiff to purchase bonds of an irrigation district, agreed by letter to repurchase them at the same price within three years, and the plaintiff notified the defendant before the expiration of that period that he wished him to carry out the agreement, and to state how and when he should send him the bonds, in reply to which defendant asked for a copy of his letter, and led plaintiff to believe that if he had agreed to repurchase the bonds he would keep his agreement, and after receiving a copy of his letter did not notify plaintiff to the contrary, until it was too late to tender the bonds within the three years, the plaintiff was excused from making such tender, and the defendant is estopped from claiming that there was no sufficient tender.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. M. T. Allen, Judge.

The facts are stated in the opinion.

W. S. Wright, for Appellant.

C. J. Willett, for Respondent.

CHIPMAN, C.—This is an action to recover from defendant the consideration paid by plaintiff to defendant for the purchase of certain bonds of the Perris Irrigation District.

It is alleged in the complaint that "in order to induce this plaintiff to purchase said bonds, the said defendant represented and promised in writing to this plaintiff that he, the defendant, would buy the said bonds all back from plaintiff in three years after the purchase and pay the plaintiff the price which plaintiff paid to defendant therefor." Judgment passed in favor of defendant, from which and from the order denying his motion for a new trial plaintiff appeals.

Finding II is as follows: "That at the time of said sale and as a part of the transaction, the said defendant offered to buy back from said plaintiff the said bonds at any time within three years after their purchase, which would not be later

than July 8, 1896, and pay the plaintiff the price which plaintiff paid defendant therefor. *That plaintiff at the time of purchase did not agree to resell said bonds, but reserved until July 8, 1896, to determine whether he would resell the same to the defendant on the terms offered. That thereafter, and about the 10th day of June, 1896, and not before, said plaintiff notified defendant of his acceptance of defendant's offer to repurchase said bonds."*

The court also found (finding III) that none of the bonds were tendered to defendant by plaintiff on July 8, 1896, nor at any time until May 1, 1897, when he made tender, which was refused by defendant; *"that said plaintiff had not been prevented by the defendant from at any time tendering him said bonds."* Appellant contends that the findings stated above in italics are contrary to the evidence.

The entire evidence is found in certain letters.

Defendant's offer to sell was made in his letter dated Pasadena, California, June 14, 1893, to plaintiff at Boston, Massachusetts. In this letter defendant assures plaintiff that the bonds are valid, and that "if there was a shade of doubt I would not offer them to any one." IIe adds: "I will agree to buy them all back from you in three years at what you pay, for I am preparing to sell my real estate as fast as I can to advantage and get everything in bonds." To this letter plaintiff replied by letter dated June 24, 1893, in which among other things he says: " . . . taking into consideration your agreement to buy back in three years the Perris bonds, I will now take some of them (although now I do not expect to ask you to carry out that agreement)."

Plaintiff ordered part of the bonds in question, stating that in a few days he would want more and on the same terms. On July 3, 1893, he ordered the balance. On May 26, 1896, plaintiff, at Boston, wrote defendant reminding him of his agreement to buy back these bonds and of the former correspondence. The letter concluded as follows: "Now, under the circumstances, I wish you to carry out that agreement and take the No. 5500 Perris irrigation bond bought of you at the same price I paid you for them as agreed. The three years will have expired on or about July 1st [the court found July 8th], and will you please write me how, and when, I shall send them to you." On June 3, 1896, defendant at

Pasadena replied as follows: "Your registered letter of
May 26th at hand. I am quite surprised at its contents.
While I did recommend the bonds and firmly believed they
were good, and do yet, I have no recollection of giving any
sort of a guarantee. Won't you kindly send me press copy
of my letter you refer to. I have so far in my life kept all
my promises and agreements in business matters, and cer-
tainly intend to do in the future." On June 23, 1896, plain-
tiff answered this letter, stating that he had been out of the
state for three weeks and had just returned, and hastened to
reply, sending defendant a copy of his letter of June 14,
1893, and calling attention to his (plaintiff's) letters of June
24 and July 3, 1893. In reply to plaintiff's letter of June
23, 1896, defendant wrote plaintiff July 6, 1896, in which
defendant stated that he found no proposition in his former
letters "to guaranty the bonds," or that he "would repur-
chase them." He stated that if there had been any such
agreement between him and plaintiff he would "have ten-
dered the money long ago." He concludes the letter as fol-
lows: "However, I am about starting on my mountain trip
to be gone a part of the summer, and I am in hopes by the
time I return a decision will be rendered by the supreme
court. Will correspond with you as soon as I return." On
November 23, 1896, plaintiff wrote defendant: "I see by the
papers the supreme court have decided in favor of the bond-
holders, which I suppose will now make the Perris bonds
good and all right, and therefore I trust you will now take
the bonds I had of you according to my understanding of
the agreement. Please let me hear from you in regard to
same." On December 2, 1896, defendant replied: "Your
proposition in regard to irrigation bonds I cannot entertain.
Your understanding and mine are quite different." This
closed the correspondence and the evidence except that, as
found by the court, "plaintiff caused said bonds to be ten-
dered to defendant on May 1, 1897, and defendant refused
to accept and pay for the same."

It is not necessary to consider plaintiff's first point as to an
apparent uncertainty in the meaning of finding marked II.
We think the finding shows that the court understood from
the evidence that defendant agreed to buy back the bonds
he sold to plaintiff in three years, and, had plaintiff made

formal demand and tender within the three years stipulated
in the agreement, the decision of the court would doubtless
have been in favor of plaintiff. The only question in the
case, as it seems to us, is whether plaintiff was excused by
defendant from making formal tender of the bonds prior to
July 8, 1896, as it is conceded that tender was necessary un-
less excused. By his letter of May 26, 1896, plaintiff called
upon defendant in plain terms to perform his agreement to
buy back these bonds, and, assuming that he would do so,
plaintiff requested defendant to say how and when he should
send them to defendant. In replying, on June 3d, defendant
does not refuse to perform, nor does he deny the contract,
but states that he has "no recollection of giving any sort of a
guaranty," and asks for a copy of his letter. At the same
time he gives plaintiff the following assurance: "I have so
far in my life kept all my promises and agreements in busi-
ness matters, and certainly intend to in the future." It
seems to us that defendant could not much more plainly have
said to plaintiff, "Let me see my letter, and if it is true that
I agreed as you say I did, you may rest secure that I will make
by promise good." The confidence which business men ordi-
narily have the right to repose in each other justified plaintiff
in assuming that no further demand or tender was necessary,
and that all he had to do was to send defendant a copy of his
agreement, which beyond all question, as the court found,
was an agreement to repurchase the bonds. Plaintiff sent a
copy of the letter to defendant, who replied on July 6, 1896:
"I cannot find in my letters . . . any proposition . . . that
I would repurchase them [the bonds] from you." This letter
was written only two days before the expiration of the time
within which plaintiff was to exercise his right under the
contract. It was not possible for defendant's letter to reach
plaintiff, at Boston, before July 8th, and necessarily not pos-
sible within that interval for plaintiff to act upon that letter
and make further demand or tender. Indeed, if this letter of
defendant can be regarded as a refusal, it would have ex-
cused tender had it reached plaintiff in time. Mr. Wharton
states the rule as follows: "The general principle is, that
a party cannot defend himself on the ground of the non-
performance on the other side of conditions whose performance
he had already notified the other party would have been nuga-

tory. If he declares himself not bound by the contract, he cannot set up failure in either demand or tender.'' (Wharton on Contracts, sec. 995; Civ. Code, sec. 1440.) It was said in *Hills* v. *Exchange Bank,* 105 U. S. 321: ''It is a general rule that when tender of performance of an act is necessary to the establishment of any right against another party, this tender or offer to perform is waived, or becomes unnecessary when it is reasonably certain that the offer will be refused, that payment or performance will not be accepted.'' Looking further, however, into defendant's letter of July 6th, the closing paragraph would seem to convey the impression that defendant did not intend his letter to be understood as refusing to perform, but rather to hold the matter over for further correspondence. He said he was going away for part of the summer, and hoped in the mean time that the supreme court would pass upon the bonds, and that on his return he would correspond with plaintiff. He undoubtedly meant to correspond further about the matter of these bonds and his contract to repurchase, and it was not until December 2,. 1896, in reply to plaintiff's letter of November 23d, that he refused to take the bonds. Section 1511 of the Civil Code provides that performance or offer of performance of an obligation, or any delay therein, is excused when the performance or offer is prevented or delayed by the act of the creditor, or ''when the debtor is induced not to make it, by any act of the creditor intended or naturally tending to have that effect done at or before the time at which such performance or offer may be made, and not rescinded before that time.'' *Herberger* v. *Husman,* 90 Cal. 583, was a case where defendant agreed that if plaintiff was dissatisfied with the purchase of certain lots at the end of one year, the defendant would return the money paid ''provided the plaintiff gave him thirty days' notice and a surrender of the title to the lots.'' Plaintiff gave the notice and offered to surrender the title, but did not tender deed. In discussing the phase of the case relating to whether a written release was necessary to restore the title the court said: ''Be that as it may, defendant is estopped by his conduct from claiming that no release was tendered, or that the contract was not tendered for cancellation. The only claim or objection he made was, that he did not have the money at the time. He led the plaintiff to

believe that he would return the money as soon as he could raise the amount; and having induced the defendant [plaintiff] to act upon the belief that he would do so, it is too late now to change his position and defeat the plaintiff on the ground that a complete technical tender was not made.'' (Citing cases.)

In the present case defendant led plaintiff to believe that if he had agreed to repurchase the bonds he would keep his agreement, and defendant did not notify plaintiff to the contrary (even if his letter of July 6th can be said to be such a notice) until it was too late for plaintiff to make tender within the three years. Plaintiff was therefore excused from making tender, and defendant is now estopped from claiming that there was no sufficient tender.

It is advised that the judgment and order be reversed.

Smith, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are reversed.

McFarland, J., Henshaw, J., Lorigan, J.