[S. F. No. 10146. In Bank.—August 2, 1923.]

## BETHANA ESTHER HULEN, Executrix, etc., Respondent, v. A. V. STUART, Appellant.

**[1]** PLEADING—AGREEMENT TO REPURCHASE STOCK—BREACH—SUFFICIENCY OF COMPLAINT.—A cause of action for the return of the purchase price of stock sold by defendant to plaintiff's testate and for interest thereon is stated by a complaint which prays for such relief and which alleges that at the time of purchase of said stock, and as part of the consideration and inducement offered by defendant to the deceased to purchase the same, the defendant agreed in writing to repurchase the stock at the same price if the

deceased wished to sell in one year, and to pay a specified rate of interest from the date of the deceased's purchase if no dividend was paid on the stock; that defendant refused at all times to repurchase the stock after demand made upon him within the one year and thereafter and tender of the stock; that no dividend was ever paid upon the stock, which had no value, and that plaintiff was unable to sell the same.

[2] ID.—SALES—DAMAGES—SECTION 3311, CIVIL CODE—SUFFICIENCY OF COMPLAINT.—Such complaint states a cause of action under section 3311 of the Civil Code, which provides: "The detriment caused by the breach of a buyer's agreement to accept and pay for personal property, the title to which is not vested in him, is deemed to be the . . . excess, if any, of the amount due from the buyer, under the contract, over the value to the seller . . . "; it (the complaint) having alleged that the stock had no value, and that the defendant promised to pay a specified amount, for which judgment is prayed, it was unnecessary to allege that plaintiff had been damaged in such sum.

[3] ID.—VALUE OF STOCK—IMMATERIALITY OF ALLEGATION AND PROOF —TENDER—ACCEPTANCE.—So far as the statement of a cause of action for the return of the purchase price of the stock with interest in accordance with the terms of the agreement executed by the defendant to deceased is concerned, an allegation in such complaint and proof of the value of the stock were immaterial for the reason that plaintiff's right to repayment did not depend upon its value; and as to the statement of a cause of action, it was likewise immaterial whether or not defendant accepted plaintiff's tender of a return of the stock.

[4] ID.—ELECTION OF REMEDIES—DAMAGES.—It is possible for a party to a contract, broken by the other party to it, to make such an election of remedies as to preclude him from thereafter seeking and obtaining the remedy of damages, but if he has not made such an election and is entitled to recover, the fact that he seeks damages according to a wrong measure is almost wholly inconsequential and does not preclude the court from according him the damages to which he is entitled according to their true measure.

[5] CONTRACTS — AGREEMENT TO REPURCHASE STOCK—CONSTRUCTION— TITLE—DELIVERY—PAYMENT.—Under an agreement by which an officer of a corporation sold to another shares of corporate stock and agreed to buy said stock from the purchaser in one year from the date of the agreement, and to pay a specified rate of interest if no dividend was paid on the stock by the end of one year, provided the purchaser wished to sell said stock at the date above named and at par, the title to the stock passed at once to the purchaser when issued, subject to his right to rescind and return the property under the terms of the agreement, and the duty of redelivery of the stock by the purchaser to the officer, and the

payment for the same by the latter, became concurrent, mutually dependent, and to be performed simultaneously.

[6] ID.—PERFORMANCE — FULFILLMENT OF CONCURRENT CONDITIONS.— Under such an agreement, the purchaser, before he could require the performance of the duty devolving upon the seller to repurchase the stock, should have offered and have been able to fulfill all conditions concurrent so imposed upon him, upon like fulfillment by the seller.

[7] ID.—DEMAND — INABILITY TO COMPLY WITH—TENDER UNNECESSARY.—Where the seller, in response to a demand by the purchaser for the repurchase of the stock, immediately admitted his inability to comply with such demand, a tender of the stock was rendered unnecessary.

[8] ID.—TENDER—ESTOPPEL.—Where the seller induced the purchaser not to make the tender of stock or offer of performance by the former's act in promising to buy the stock in another year if no dividends were paid, the seller cannot later change his position and defeat the claim of the purchaser on the ground that a complete technical tender was not made.

[9] ID.—ACTION TO RECOVER PURCHASE PRICE OF STOCK—ACCRUAL OF CAUSE OF ACTION — CONSTRUCTION. — Under an agreement, by which defendant agreed to repurchase the stock sold to the deceased "in one year from date," viewed in the light of the entire transaction, including the conduct of the parties according to the testimony of both plaintiff and defendant, the deceased had no cause of action against defendant until he waited the passage of the year and then notified defendant that he desired to sell.

[10] ID.—DEMAND—TIME OF MAKING — PERFORMANCE—CONSTRUCTION. In an action by the executrix of the deceased purchaser's estate upon such an agreement, assuming a demand was made before the expiration of the year upon the defendant for the repurchase of the stock in question, the deceased preserved his cause of action by renewing his demand and notifying the defendant that he desired to sell shortly after the expiration of the year; and the renewal of the notice and demand was not an offer of performance after a specified time fixed therefor, within the meaning of section 1490 of the Civil Code, but a further (possibly the first) notice and demand, after defendant was in default.

[11] ID.—RETENTION OF TITLE TO STOCK — EVIDENCE. — In such an action, the weight and effect to be given to the circumstance that upon a reorganization of the corporation the deceased did not sell his stock (which circumstance was advanced as an argument in support of the contention that deceased was satisfied with owning stock in the concern and desired to retain connection with the business), and to the testimony by which it was established, were matters for the consideration of the trial court.

[12] ID.—BREACH OF PARTY—ACTS OF OTHER WITH REFERENCE TO PROPERTY—EFFECT OF.—Acts of a party, after breach of a contract by another in dealing with the property which is the subject of the transaction, do not necessarily deprive him of his right to maintain his action for damages.

[13] ID.—NOTICE OF INABILITY TO PERFORM—SUBSEQUENT NOTICE OF ABILITY TO PERFORM—BURDEN OF PROOF.—After one party to a contract has notified the other that he will not, or cannot, perform, the burden is upon him to show that prior to the time of performance he notified the other party of his willingness and ability to perform.

[14] FINDINGS — INFERENCES—JUDGMENT.—Necessary inferences from findings in order to support a judgment may be drawn on appeal.

[15] ID.—FAILURE TO FIND—ADVERSE FINDING IF MADE—EFFECT UPON JUDGMENT.—A failure to find upon an issue is not a ground for the reversal of the judgment where such a finding, if made, would be adverse to the appellant.

[16] CONTRACTS — AGREEMENT TO REPURCHASE STOCK — ACTION FOR PURCHASE MONEY—DEPOSIT OF CERTIFICATES IN COURT—PAYMENT —DELIVERY.—In an action by the executrix of her deceased's husband's estate for the recovery of the purchase price of stock which the defendant agreed to repurchase, where the plaintiff, as executrix, still retains possession of the stock, the certificates, which were produced in court, upon payment of the amount of the judgment in favor of the plaintiff, can be indorsed and delivered to the defendant.

APPEAL from a judgment of the Superior Court of Santa Cruz County. Benjamin K. Knight, Judge. Affirmed.

The facts are stated in the opinion of the court.

Lucas F. Smith, Lucas F. Smith, Jr., and Stanford G. Smith for Appellant.

Ralph H. Smith for Respondent.

WASTE, J.—The plaintiff, as executrix of her deceased husband's estate, brought this action to recover from defendant the sum of $2,000 and interest, alleged to be due by reason of an unfulfilled agreement to repurchase certain corporation stock sold by the defendant to the decedent in his lifetime.

As a cause of action, the plaintiff alleged that on or about the fifteenth day of September, 1915, William Yancey Hulen, the decedent, purchased from defendant twenty shares of the capital stock of the Santa Cruz Fruit and Olive Canning Company, and paid therefor the sum of $2,000; that at the time of the purchase, and as part of the consideration and inducement offered by defendant to her husband to purchase the stock, the defendant agreed in writing to repurchase the same if Hulen wished to sell in one year, and to pay therefor the sum of $100 per share, and, in addition, interest at the rate of twelve per cent per annum from the date of the purchase, provided no dividend had been paid on the stock; that within one year, and immediately upon the expiration of that period from the date of sale, Hulen demanded that defendant repurchase the stock at the agreed price, and that plaintiff, as executrix, after the death of Hulen, made like demand and tendered such stock to defendant; but that defendant refused at all times to repurchase the same. There is an allegation that no dividend has ever been paid upon the stock, which has no value, and plaintiff has been unable to sell the same. The prayer of the complaint is for judgment against the defendant in the sum of $2,000, together with interest at twelve per cent and costs of suit. The defendant answered, specifically denying the allegations of the complaint. The finding of the court was in favor of plaintiff, and judgment followed as prayed for. The defendant has appealed.

From the record it appears that prior to September, 1915, there had been formed a corporation known as the Santa Cruz Fruit and Olive Canning Company. The defendant Stuart owned the controlling interest in the company at that time and was its president. The company being in need of money with which to pay its help during the canning season of 1915, the defendant entered into an arrangement with Hulen, plaintiff's testate, that if Hulen would purchase twenty shares of the capital stock of the corporation at the par value of $100 per share, he (defendant) would buy the stock back in one year. Hulen accepted the arrangement and paid $2,000 to the defendant. At the time, and as part of the transaction, the defendant executed and delivered to Hulen an agreement reading as follows:

"Santa Cruz, California, Sept. 15, 1915.

"This is to certify that W. Y. Hulen has bought Twenty (20) Shares of the Capital Stock of the Santa Cruz Fruit & Olive Canning Company at $100.00 a share, the total amount paid being Two Thousand Dollars ($2,000).

"And I, A. V. Stuart, agree to buy said stock from Mr. W. Y. Hulen, in one (1) year from this date, including 12% interest per annum, in case there be no dividend paid on said stock by the end of one year and providing Mr. W. Y. Hulen wishes to sell said stock at the date above named at par value, $100 a share.

"And furthermore, will say this agreement is made in good faith in duplicate.

"A. V. STUART,

"President, Santa Cruz Fruit & Olive Canning Co.
"Witness:—

"DANIEL F. GALLIVAN.

"This is to certify that I further agree to pay all or any assessments that may be made on said above capitol Stock of the Santa Cruz Fruit & Olive Canning Co. during the life of this contract being one Year from this 15th day of September, 1915.

"Signed—A. V. STUART,

"Pres. of the Santa Cruz Fruit & Olive Canning Co."

No dividends were paid within the year, and upon the expiration of that period Hulen demanded of the defendant that he repurchase the stock. Stuart refused. There is a flat contradiction in the record as to what occurred in this connection. The plaintiff testified she was present when demand was made by her husband upon Stuart that he repurchase the stock. The defendant replied, "Oh, no, you got the stocks there, I can't buy them." "He said for us to hold them, and then if we didn't get no dividends at the end of the next year he would buy them, for he was very bad off for money." Defendant denied that any demand was made upon him, and testified that at the expiration of the year Hulen signified his willingness to keep the stock. On October 7, 1916, shortly after the expiration of the year, the defendant gave to Hulen a check of the Santa Cruz Fruit and Olive Canning Company, signed by the secretary and by himself, as president, for $240. Mrs. Hulen testified that this check was for the interest at twelve per

cent, according to the terms of the agreement. Defendant's testimony is that at the end of the first year Hulen came to him "about getting a dividend or something. . . . He did not say he wanted him [Stuart] to take the stock back. . . . He was perfectly satisfied, and so he says, 'Our year is up on that contract for that interest or the dividend.' . . . I said, 'What do you want to do about it?' and he said, 'All I want is the $240 or whatever dividend they are making, if it is that much, I want that.' I said, 'How about keeping in the company,—are you satisfied?' 'Perfectly satisfied, Mr. Stuart,' he said, 'I am willing to go on.'" The contention of the defendant, however, was not, in the opinion of the trial court, supported by sufficient evidence upon which to base a finding, and it found that a demand for the repurchase was in fact made by Hulen.

[1] The complaint clearly states a cause of action for the return of the purchase price of the stock with interest in accordance with the terms of the agreement executed by the defendant to Hulen. (*Schulte* v. *Boulevard Gardens Land Co.,* 164 Cal. 464, 471 [Ann. Cas. 1914B, 1013, 44 L. R. A. (N. S.) 156, 129 Pac. 582]; *Dickinson* v. *Zubiate Mining Co.,* 11 Cal. App. 656, 662 [106 Pac. 123]; *Williamson* v. *Marshall,* 54 Cal. App. 24, 28 [200 Pac. 1058].) [2] On still another theory the complaint states a cause of action, under section 3311 of the Civil Code, which provides: "The detriment caused by the breach of a buyer's agreement to accept and pay for personal property, the title to which is not vested in him, is deemed to be the . . . excess, if any, of the amount due from the buyer, under the contract, over the value to the seller. . . . " Having alleged that the stock had no value, and that the defendant promised to pay a specified amount, for which judgment is prayed, it was unnecessary to allege that plaintiff had been damaged in such sum. [3] An allegation and proof, under the first theory, of the value of the stock was also immaterial for the reason that plaintiff's right to repayment did not depend upon its value; and as to the statement of a cause of action, it is likewise immaterial whether or not defendant accepted plaintiff's tender of a return of the stock. (*Dickinson* v. *Zubiate Min. Co.,* 11 Cal. App. 663 [106 Pac. 123]; *Schulte* v. *Boulevard Gardens Land Co.,* 164 Cal. 471 [Ann. Cas. 1914B, 1013, 44 L. R. A. (N. S.) 156, 129 Pac. 582].)

Even though the plaintiff in stating her cause of action had mistaken the measure of the recovery which she sought, it would have made no difference. **[4]** It is possible for a party to a contract, broken by the other party to it, to make such an election of remedies as to preclude him from thereafter seeking and obtaining the remedy of damages, but if he has not made such an election and is entitled to recover, the fact that he seeks damages according to a wrong measure is almost wholly inconsequential and does not preclude the court from according him the damages to which he is entitled according to their true measure. (*Phillips* v. *Stark*, 186 Cal. 369, 371 [199 Pac. 509]; *Bartlett* v. *Odd Fellows' Sav. Bank*, 79 Cal. 218, 223 [12 Am. St. Rep. 139, 21 Pac. 743].)

**[5]** The title to the stock passed at once to Hulen when issued, subject to his right to rescind and return the property under the terms of the agreement. (*Guss* v. *Nelson*, 200 U. S. 298, 302 [50 L. Ed. 489, 26 Sup Ct. Rep. 260]; *Sturm* v. *Boker*, 150 U. S. 312, 328 [37 L. Ed. 1093, 14 Sup. Ct. Rep. 99, see, also, Rose's U. S. Notes].) The duty of redelivery of the stock by Hulen to Stuart, and the payment for the same by Stuart, became concurrent, mutually dependent, and to be performed simultaneously. **[6]** This being true, Hulen, before he could require the performance of the duty devolving upon Stuart to repurchase the stock should have offered and have been able to fulfill all conditions concurrent so imposed upon him, upon like fulfillment by Stuart. (*Porter* v. *Plymouth Gold Min. Co.*, 29 Mont. 347, 360 [101 Am. St. Rep. 569, 74 Pac. 938]; *Hellings* v. *Heydenfeldt*, 107 Cal. 577, 585 [40 Pac. 1026].)

There is an allegation in the complaint that the stock was tendered to the defendant, and the trial court has found that it was, but the evidence does not support the finding. **[7]** It does appear, however, that the defendant, in response to the demand made by Hulen, immediately admitted his inability to comply with it, thus rendering a tender unnecessary. (*Tatum* v. *Ackerman*, 148 Cal. 357, 360 [113 Am. St. Rep. 276, 3 L. R. A. (N. S.) 908, 83 Pac. 151]; Civ. Code, sec. 1440.) **[8]** Performance was excused when Hulen was induced not to make the tender or offer of performance by the act of Stuart in promising to buy the stock in another year if no dividends were paid.

(Civ. Code, sec. 1511, subd. 3; *Pierce* v. *Lukens,* 144 Cal. 397 [77 Pac. 996].) Having induced Hulen to act upon that belief, it is too late now for defendant to change his position and defeat the plaintiff on the ground that a complete technical tender was not made. (*Herberger* v. *Husman,* 90 Cal. 583, 585 [27 Pac. 428].)

The appellant contends that the evidence fails to establish that a tender and demand for the repurchase of the stock was made during the life of the agreement. Assuming that the testimony of plaintiff is conflicting as to whether or not a first demand was made within one year from September 15, 1915, it clearly appears that a demand was made at the expiration of the year. The defendant testified that "at the end of the first year, that is along about September 15th or 16th, 1916, Mr. Hulen came to [him] about getting a dividend or something." Defendant's obligation was not to buy the stock from Hulen "within" one year, but "in one year from date," implying that the repurchase would occur at the end of the period mentioned. (Standard Dictionary.) [9] Viewed in the light of the entire transaction, including the conduct of the parties according to the testimony of both plaintiff and defendant, the decedent Hulen had no cause of action against defendant until he waited the passage of the year, and then notified defendant that he desired to sell. [10] Assuming a demand was made before the expiration of the year, Hulen preserved his cause of action by renewing his demand and notifying defendant that he desired to sell, when he received the check for the interest in October following. The renewal of the notice and demand was not an offer of performance after a specified time fixed therefor, within the meaning of section 1490 of the Civil Code, but a further (possibly the first) notice and demand, after defendant was in default. (*Howard* v. *Galbraith,* 13 Cal. App. 373, 377, 378 [109 Pac. 889].)

There is evidence in the record from which appellant argues that Hulen did not intend to vest title to the stock in Stuart at the time he made the demand for the repurchase. It is apparent that the trial court was not impressed with the weight of such testimony. It has accepted as true the testimony of the plaintiff that neither her husband nor she ever attempted to sell the stock. As executrix

of her husband's estate, she has it in her possession. The claim of the defendant that the $240 paid to Hulen was in the nature of a dividend is met by the testimony of the plaintiff that it was paid and accepted as, and was in fact, interest paid in accordance with the terms of the agreement. There is no satisfactory proof that any dividends were ever paid by the corporation. [11] Stuart, and stockholders to whom he had given agreements to repurchase similar to the one entered into by him with Hulen, sold their stock upon reorganization of the canning company. Hulen did not. Appellant advances this fact as an argument in further support of his contention that Hulen was satisfied with owning stock in the concern, and desired to retain his connection with the business. The weight and effect to be given to this circumstance, and to the testimony by which it was established, were matters for the consideration of the court below. [12] Acts of a party, after breach of a contract by another in dealing with the property which is the subject of the transaction, do not necessarily deprive him of his right to maintain his action for damages. (*Phillips* v. *Stark, supra.*)

There remains to be considered the question of the sufficiency or insufficiency of the findings to support the judgment under either theory of the case. The court found a tender, but there is no evidence to support the finding. It did not find any facts excusing a tender. The findings in other respects are as comprehensive as the pleadings. The court found that when demand was made by Hulen, the defendant refused, and at all times since has refused, to repurchase the stock. The evidence is that he said he could not. [13] After one party to a contract has notified the other that he will not, or cannot, perform, the burden is upon him to show that prior to the time of performance he notified the other party of his willingness and ability to perform. (*Howard* v. *Galbraith, supra; Tatum* v. *Ackerman, supra;* Civ. Code, sec. 1440.) The ultimate fact was the amount, if anything, due plaintiff from defendant by reason of his refusal to repurchase the stock. This the court ascertained and found from the evidence, and necessarily included the whole controversy. (*Tower* v. *Wilson,* 45 Cal. App. 123, 133 [188 Pac. 87].) [14] We are en-

titled to draw necessary inferences from findings in order to support a judgment. (*Lomita Land & Water Co.* v. *Robinson,* 154 Cal. 36, 49 [18 L. R. A. (N. S.) 1106, 97 Pac. 10].) **[15]** From the facts found, and from the judgment ordered, it is evident, in the light of the entire record, that if more complete findings had been made they would have been adverse to the contentions of the appellant. If that be so, the failure to find further is not a ground for the reversal of the judgment. (*Krasky* v. *Wollpert,* 134 Cal. 338, 342 [66 Pac. 309].)

**[16]** The plaintiff, as executrix, still retains possession of the stock. The certificates were produced in court, and can be indorsed and delivered to the defendant, upon payment of the amount of the judgment, as was contemplated in *Williamson* v. *Marshall, supra.*

The judgment is affirmed.

Lennon, J., Lawlor, J., and Seawell, J., concurred.


KERRIGAN, J., Dissenting.—I dissent. The judgment in this case awards to the plaintiff, as the executrix of the estate of her deceased husband, William Y. Hulen, the sum of $2,000, being the amount of the agreed purchase price of twenty shares of the capital stock in a corporation, upon the mere breach on the part of the defendant of his agreement to purchase said stock, with nothing in the record to show either that title to the stock had passed to and vested in the defendant, or that the said sum of $2,000 was the difference between the contract price of the stock and the amount realized upon a sale thereof pursuant to the provisions of section 3049 of the Civil Code, or between such contract price and its market value at or within a reasonable time after the breach.

In this state the measure of damages for the breach of a buyer's agreement to pay for personal property is laid down in sections 3310 and 3311 of the Civil Code, and the provisions of those sections make no distinction between shares of stock in a corporation and goods or commodities forming the subject of general commerce.

The first of those sections reads as follows: "The detriment caused by the breach of a buyer's agreement to ac-

cept and pay for personal property, the title to which is vested in him, is deemed to be the contract price."

As above stated, there is no evidence in the record that the title to the stock in question ever vested in the defendant. On the contrary, an actual tender being excused by the announced inability or refusal of the defendant to take and pay the price thereof, the stock was retained by Hulen for some two years, when he died, and by his executrix for another two years, when this action was brought. During that period Hulen was elected a director of the corporation; a change of control occurred by the coming in of new stockholders, who purchased a large majority of the stock, paying its full par value. At that time the defendant, if by any act or suggestion on the part of Hulen he had been apprised that Hulen regarded the title to these twenty shares as having passed to and vested in him, could have disposed of the same at an advantageous price. Thereafter the corporation became involved in financial difficulties and its stock became practically worthless. Then, for the first time and some two years after the breach by the defendant, Hulen attempted by private sale to dispose of the stock, but without success. Another two years passed, and the plaintiff, as the executrix of Mr. Hulen, now deceased, renewed the attempt, with a similar result. These attempts to dispose of the stock at private sale may be taken as conclusive that the plaintiff or her predecessor did not consider that title thereto had vested in defendant, since in that event such a sale would have constituted a conversion of the stock (*Bennett* v. *Potter,* 16 Cal. App. 183 [116 Pac. 681]). It seems clear, therefore, that the plaintiff was not entitled to recover from the defendant the contract price of the stock upon the theory that the title thereto had vested in said defendant.

This brings us to the measure of damages prescribed by section 3311 of said code. That section provides:

"The detriment caused by the breach of a buyer's agreement to accept and pay for personal property, the title to which is not vested in him, is deemed to be:

"1. If the property has been resold, pursuant to sec. 3049, the excess, if any, of the amount due from the buyer under the contract over the net proceeds of the resale; or

"2. If the property has not been resold in the manner prescribed by sec. 3049, the excess, if any, of the amount due from the buyer under the contract over the value to the seller . . . ''

It is apparent that Hulen or the plaintiff, being still in possession of the stock, could have proceeded under the first subdivision of this section and have sold the stock in the manner provided for in the sale of a pledge, and have brought suit for the difference, between the amount realized at such sale and the contract price. This neither of them attempted to do. The plaintiff is therefore relegated to the second subdivision of said section for her measure of damages, which is "the excess, if any, of the amount due from the buyer under the contract over the value to the seller"; and this "value to the seller" is defined by section 3353 of the Civil Code to be "the price which he could have obtained in the market nearest to the place at which it should have been accepted by the buyer and at such time after the breach of the contract as would have sufficed with reasonable diligence for the seller to effect a resale." As a matter of fact the plaintiff seems to have adopted as her measure of damages the one prescribed in said subdivision 2, since in praying for judgment for $2,000 she alleges in her complaint that the stock has, and at the time of the breach of the contract had, no value—an allegation which would be entirely superfluous in a complaint for the recovery of the contract price. Moreover, at the trial she introduced evidence of the market value of the stock, attempting to show that it had no value. It may be conceded that had she established the worthlessness of the stock at the time indicated in said section 3353 of the Civil Code, namely, "at such time after the breach of the contract as would have sufficed with reasonable diligence for the seller to effect a resale," the amount of the judgment given in her favor could not be questioned; but the fact is that the only evidence of market value offered by the plaintiff referred to a time two years and four years after the breach. On the other hand, as already indicated, the record contains evidence introduced by the defendant that a few months after the breach of the contract many shares of this stock changed hands at a price of $100 per share; that such sum was its market value, and that the

assets of the corporation would have warranted even a higher price. This evidence was competent to establish market value (*Moffitt* v. *Hereford,* 132 Mo. 513 [34 S. W. 252]); it was uncontradicted and unimpeached; and the finding of the trial court that the stock was valueless at that time is in plain disregard of such evidence and demands a reversal of the judgment.

The prevailing opinion seems to proceed upon the theory either that title to this stock passed to the defendant by the mere demand of Hulen that defendant take the stock as agreed, or that the plaintiff was entitled in any event to recover the contract price.

That in this state a person making a tender in performance of an obligation must by some act indicate to the person to whom performance is due that he intends to pass title to the thing offered necessarily results from the terms of section 1502 of the Civil Code, which provides: "The title to a thing duly offered in performance of an obligation passes to the creditor *if the debtor at the time signifies his intention to that effect.*" The intent of the seller with respect to passing title when he makes a tender is a question of fact. (*Clark* v. *Rush,* 19 Cal. 393; *Todd* v. *Lyon,* 55 Cal. App. 67 [202 Pac. 899].) The intent of the seller to pass title to the buyer does not inevitably, or at all, follow from a mere tender. A tender, without more, indicates that the seller offers to pass title pursuant to the terms of the contract. If the contract provides that payment is to be made upon delivery, then the tender implies that the title is to pass concurrently with the payment of the purchase price by the buyer, but not otherwise. (*Hewes* v. *Germain Fruit Co.,* 106 Cal. 441 [39 Pac. 853]; *Katzenbach* v. *Breslauer,* 51 Cal. App. 756 [197 Pac. 967].)

In the case at bar the necessity of some action on the part of Hulen to signify his intention that title to the stock should pass to the defendant is emphasized by the fact that there was in fact no tender. Even if an actual tender had been made it was still incumbent upon Hulen, in order to comply with the section of the Civil Code last quoted, to signify at that time his intention to pass title.

The prevailing opinion disposes of the question of the passage of title, upon which turns the all-important question

of the measure of damages, by the statement that "The ultimate fact was the amount, if anything, due plaintiff from defendant by reason of his refusal to repurchase the stock. This the court ascertained and found .from the evidence, and necessarily included the whole controversy." But the court's determination of the amount due from the defendant to the plaintiff was based upon its finding that the stock from the inception to the end of the transaction was valueless, and this finding is not only unsupported by the evidence, but is directly opposed to it. In fact, it appears to me to have been inadvertently made, since it is not confined to the time to which the evidence of the worthlessness of the stock was addressed, namely, two and four years after the breach of the contract, but includes the time at which the original purchase was made by plaintiff's testator, and other times when the stock was changing hands for its par value, as to which times not even the plaintiff introduced any evidence that it was not worth the price at which it was being bought and sold. And it is not necessary to say that this court is not concluded by a finding which is entirely unsupported by the evidence.

Nor is the question of rescission involved in the case, as seems to be suggested in the prevailing opinion. The defendant's obligation was to purchase from the plaintiff's testator stock which the latter had acquired directly from the corporation. In a case where a party to a contract is entitled to rescind, all parties, when the rescission is duly effected, are restored to their former status, which includes their relation to the title to the property, so that in a case where a formal tender is excused the title would pass without it. Otherwise in a case, such as the present, of the breach of an executory contract for the sale and purchase of personal property.

I conclude, therefore, that there being no evidence in the record of any act on the part of the plaintiff or her testator vesting title to the stock in question in the defendant, and the finding of the trial court that the said stock was without value being based exclusively upon evidence relating to a period too remote from the breach of the contract, and the record containing ample evidence upon which to base a finding that said stock had a market value of $100 per share at a time material to the controversy, the finding in plaintiff's

favor is against the evidence, and cannot support the judgment.

Myers, J., concurred.

Rehearing denied.

Myers, J., dissented.