[Civ. No. 6754. First Appellate District, Division One.—June 4, 1929.]

A. T. NIELSEN, Respondent, v. C. O. SWANBERG, Appellant.

Joseph C. Meyerstein for Appellant.

Avery J. Howe for Respondent.

CAMPBELL, J., *pro tem.*—This action is for the purpose of recovering the purchase price of certain stock and is

predicated upon a clause in a written agreement executed on June 25, 1923, between the Altomont Creamery, Inc., (respondent's assignor), as the party of the first part, Acme Ice Cream Company, as party of the second part, and C. O. Swanberg (appellant), as party of the third part, which is as follows: "The Third Party further agrees that at any time prior to July 1, 1926, should the first party not have exercised the option next hereinabove given it to exchange the said preferred stock for common stock, he, the Third Party, at the option and upon the request of the First Party, will purchase the said 130 shares of preferred stock at the price of $100 per share, payable at the rate of $1000 upon transfer of the said stock, and not less than $1000 per month thereafter until the entire sum of $13,000 is paid, provided, however, that in case the First Party shall desire to exercise either of the options herein granted, it shall so notify the Third Party not less than 30 days prior to the time when such option shall be exercised, said stock to be pledged as security for payment of the said repurchase price." Respondent A. T. Nielsen, the assignee of Altomont Creamery, Inc., was the owner of all of the stock of the Altomont Creamery, Inc., with the exception of two shares, one of which was owned by his wife and the other by one R. W. Johnstone, and while one Roseberg was the general manager of the Acme Ice Cream Company, appellant C. O. Swanberg appears to have been the controlling spirit of the corporation—at least he dictated its action with reference to the agreement under consideration in which he agreed to purchase the Acme Ice Cream Company stock from Altomont Creamery, Inc., respondent's assignor, which stock was to be pledged as security for the payment of the "repurchase price." Judgment was entered for plaintiff for $3,000, as the monthly installments found to be due under the contract up to the filing of the complaint, and from such judgment defendant has appealed.

Appellant specifies the following errors: the court erred in finding that respondent elected to exercise the option contained in the agreement sued upon; that respondent tendered the stock to appellant; that the Altomont Creamery, Inc., or its assignee, performed all the terms and conditions of the agreement sued upon on their part; that defendant did breach, break and repudiate said agreement,

and that there is now due, owing and wholly unpaid and was at the time of the commencement of this action due, owing and wholly unpaid by appellant to respondent the sum of $3,000. The first and main question presented is, did respondent exercise his option, for under the terms of the agreement sued upon it was incumbent upon him to notify appellant thirty days prior to July 1, 1926, that he elected to do so.

The testimony relative to the demand or notification that respondent desired to exercise his option is without dispute that respondent called upon appellant at the Granada Hotel in San Francisco in February, 1926, and said to him: "I asked him if he bore in mind that I had 130 shares of stock that would be due and payable about June or July, and he said 'yes,' he was aware of that fact and that it would be taken care of. Q. Did he say anything as to what was meant by the expression 'taken care of'? The Court: You say you made a demand upon him? A. Yes. Q. Now, what was that demand? A. The demand that he pay me $1000 a month on the preferred stock, which he had guaranteed to repurchase. Q. Did you say that to him in the same language you have used here, or substantially that language: A. I said to him exactly as I said before. I asked him if he was aware of the fact that that would be due and payable at that time, and he said yes, that he had that in mind, and that it would be taken care of." In this conversation respondent requested that appellant purchase the stock, "that he pay me $1000 a month on the preferred stock, which he had guaranteed to repurchase." Appellant contends that this statement that he demanded that appellant pay him $1,000 a month on the preferred stock is qualified by respondent's answer to the question by the court: "I said to him exactly as I said before. I asked him if he was aware of the fact that that ($1000 a month) would be due and payable at that time and he said yes, he had that in mind, and that it would be taken care of." We question appellant's claim that respondent intended to qualify his statement that he demanded that appellant pay him $1,000 a month on the preferred stock. In any event, appellant must have understood that respondent was exercising his option and request-

ing him to purchase the preferred stock. This is shown by his answer: "Yes, he was aware of that fact and that it would be taken care of." This is further evidenced by appellant's statement to respondent when the latter called at the Granada Hotel in July, as testified to by respondent: "I know what you are here for and I have a long story to tell you . . . He was very sorry to have to tell me that he wasn't able to pay me for the stock right now, but if I would not get excited about it and go to court about it, he would make arrangements to pay me a little later on."

In *Flickinger* v. *Heck*, 187 Cal. 111, 114 [200 Pac. 1045], the court says: "The particular act or acts which constitute an election may be fixed by the terms of the option, as also the time when, the place where and the persons to whom it shall be made (James on Option Contracts, secs. 801, 807). The language of the contract itself controls as to what act or acts constitute an election. Under the terms of one option, the election may consist of a tender of the property to be sold or purchase price to be paid; under the terms of another option, it may consist of a mere notice of election to purchase or sell, leaving payment of the price and delivery of the property as subsequent matters in performance of the executory contract raised by the election (*Breen* v. *Mayne*, 141 Iowa, 399 [118 N. W. 441]." The contract in the present case provides that to exercise the option "it (Altomont Creamery, Inc., respondent's assignor) shall so notify the third party (appellant) not less than 30 days prior to the time when said option shall be exercised." There is no question but that the notification given was within the period provided in the contract, the only point raised being as to its sufficiency.

As to appellant's contention that the notification should be in writing to take it out of the statute of frauds, it may be said that appellant had bound himself in writing in the original contract to perform his obligation to purchase the stock upon Altomont Creamery, Inc., respondent's assignor, notifying appellant of its desire to exercise the option. Furthermore, as no objection was interposed at the trial nor motion for nonsuit made, the objection cannot now be insisted upon (*Nunez* v. *Morgan*, 77 Cal. 427 [19 Pac. 753]; *Armstrong* v. *Barceloux*, 34 Cal. App. 437 [167 Pac. 895]).

■ Appellant gave respondent to understand by his statement "Yes, he was aware of the fact that it would be taken care of" that no tender would be necessary. In the early part of July, 1926, appellant said to respondent: "I am very sorry, Mr. Nielsen, that I am an old man, over 80 years old, and this is the first time I ever had to break my word, but I am simply unable to pay it." At this time he made no statement that had the stock been tendered before July 1st he could have completed the purchase according to the agreement, nor did he offer any evidence to that effect at the trial. While the complaint alleges a tender and the court so found and the evidence does not support such a finding, the inability of appellant to consummate the purchase and his giving respondent to understand that no tender would be necessary renders a tender unnecessary (*Hulen* v. *Stuart,* 191 Cal. 562, 569 [217 Pac. 750]). Where "defendant led plaintiff to believe that if he had agreed to repurchase the bonds he would keep his agreement, and the defendant did not notify plaintiff to the contrary . . . until it was too late for plaintiff to make tender . . . plaintiff was therefore excused from making tender, and defendant is now estopped from claiming that there was no sufficient tender" (*Pierce* v. *Lukens,* 144 Cal. 397, 402 [77 Pac. 996]). ■ Further, the agreement here provides that the stock is to be purchased on monthly payments and "Said stock to be pledged as security for payment of said repurchase price." The stock being pledged, no tender was necessary—a pledgor is not entitled to possession of pledged property until the debt is paid (*Puckhaber* v. *Henry,* 152 Cal. 419 [125 Am. St. Rep. 75, 14 Ann. Cas. 844, 93 Pac. 114] ; *Savings Union Bank & Trust Co.* v. *Crowley,* 176 Cal. 546 [169 Pac. 67]). Restoration of the stock to appellant would have extinguished respondent's lien (Civ. Code, sec. 2913).

■ A rehearing was granted in this case in view of appellant's contention that the original decision was in conflict with the rule announced in *Levinson* v. *Silverman,* 89 Cal. App. 416 [264 Pac. 796], *Gopcevic* v. *California Packing Corp.,* 64 Cal. App. 132 [220 Pac. 1079], and *Cuthill* v. *Peabody,* 19 Cal. App. 305 [125 Pac. 926], but after a careful review of these cases we are of the opinion that they are distinguishable from the present case, as here

the stock was to be paid for in monthly payments and not in a lump sum and "said stock to be pledged as security for payment of the said repurchase price" and falls within the rule announced in *Hulen* v. *Stuart, supra,* in which case the facts show that after the breach by the defendant the plaintiff retained the shares of stock; that no attempt was made to sell them, and plaintiff—as in the present case—produced in court the certificates of stock. It was argued that plaintiff's sole remedy was either a resale of the stock and suit for the balance, or the difference between the market price and the contract price, that is, a suit for damages, or as announced in *Cuthill* v. *Peabody,* that the vendor would be compelled to recoup his loss, if any, solely by an action for damages founded upon a breach of the vendee's contract to accept and pay for the property under section 3311 of the Civil Code. The prayer of the complaint was not for damages, but for a specific sum, the contract price agreed to be paid by the defendant to the plaintiff. The court, speaking through Mr. Justice Waste —now chief justice—uses this language:

"The complaint clearly states a cause of action for the return of the purchase price of the stock with interest in accordance with the terms of the agreement executed by the defendant to Hulen. (*Schulte* v. *Boulevard Gardens Land Co.,* 164 Cal. 464 [Ann. Cas. 1914B, 1013, 44 L. R. A. (N. S.) 156, 129 Pac. 582]; *Dickenson* v. *Zubiate Mining Co.,* 11 Cal. App. 656, 662 [106 Pac. 123]; *Williamson* v. *Marshall,* 54 Cal. App. 24, 28 [200 Pac. 1058].) On still another theory the complaint states a cause of action under section 3311 of the Civil Code, which provides: 'The detriment caused by the breach of a buyer's agreement to accept and pay for personal property, the title to which is not vested in him, is deemed to be the . . . excess, if any, of the amount due from the buyer, under the contract, over the value to the seller . . . ' Having alleged that the stock had no value, and that the defendant promised to pay a specified amount, for which judgment is prayed, it was unnecessary to allege that plaintiff had been damaged in such sum. An allegation and proof, under the first theory, of the value of the stock was also immaterial for the reason that plaintiff's right to repayment did not depend upon its value; and as to the statement of a cause of action, it is

likewise immaterial whether or not defendant accepted plaintiff's tender of a return of the stock. (*Dickinson* v. *Zubiate Mining Co.,* [*supra*], p. 663, *Schulte* v. *Boulevard Gardens Land Co.,* [*supra*], p. 471.) Even though the plaintiff in stating her cause of action had mistaken the measure of the recovery which she sought, it would have made no difference. It is possible for a party to a contract, broken by the other party to it, to make such an election of remedies as to preclude him from thereafter seeking and obtaining the remedy of damages. But if he has not made such an election and is entitled to recover, the fact that he seeks damages according to a wrong measure is almost wholly inconsequential and does not preclude the court from according him the damages to which he is entitled according to their true measure. (*Phillips* v. *Stark,* 186 Cal. 369, 371 [199 Pac. 509]; *Bartlett* v. *Odd Fellows' Sav. Bank,* 79 Cal. 218, 223 [12 Am. St. Rep. 139, 21 Pac. 743].)'' The court further says: ''The plaintiff, as executrix, still retains possession of the stock. The certificates were produced in court, and can be endorsed and delivered to the defendant, upon payment of the amount of the judgment, as was contemplated in *Williamson* v. *Marshall, supra.*''

The case of *Williamson* v. *Marshall,* referred to as in accord, is found in 54 Cal. App. 24 [200 Pac. 1058]. The suit was for the breach of a written agreement by the defendant to repurchase from plaintiff all of his 100 shares of the capital stock of a corporation at the fair value of such shares. The court there says: ''The sole purpose of the present action, notwithstanding the form of the prayer of the complaint, is to recover from the defendants the sum of money agreed to be repaid in accordance with the terms of the agreement. . . . The consideration had passed to the obligor and the only duty imposed upon the defendants was the obligation to repay the sum of money specified. (*Dickinson* v. *Zubiate Min. Co.,* [*supra*]; *Hellings* v. *Heydenfeldt,* 107 Cal. 577 [40 Pac. 1026].) The facts bring the case within the provision of section 3302 of the Civil Code, which provides that 'The detriment caused by the breach of an obligation to pay money only, is deemed to be the amount due by the terms of the obligation with interest thereon.' We do not think it matters, as urged by the respondents, that the plaintiff has not followed the usual

and ordinary form of alleging his damage. Under our code there is but one form of action, and if the complaint states facts which entitle the plaintiff to relief, either legal or equitable, it is not demurrable upon the ground that it does not state facts sufficient to constitute a cause of action. (*Whitehead* v. *Sweet,* 126 Cal. 67, 73 [58 Pac. 376].) 'When the plaintiff, as here, alleges facts to exist, which, if proved, would entitle him to recover the sum of money he demands from the defendant, he has shown, so far as the recitals of the complaint can, that he has sustained damages.' (*Bartlett* v. *Odd Fellows' Sav. Bank,* 79 Cal. 218, 223 [12 Am. St. Rep. 139, 21 Pac. 743].) Having alleged that the defendants had promised to pay the fair and reasonable value of the stock, which is stated, and for which, when determined by the court to be fair and reasonable, judgment is prayed, it was unnecessary to allege that plaintiff had been damaged in such sum. (*Dickinson* v. *Zubiate Min. Co.,* 11 Cal. App. 656, 663 [106 Pac. 123].)''

In *Hulen* v. *Stuart* the certificates were not indorsed over, and the court held that, the certificates being produced in court, the plaintiff should recover the full purchase price and indorse and deliver the stock to the defendant.

 Furthermore, appellant was a party to the agreement; was the active representative of the Acme Ice Cream Company, the second party therein in consummating the agreement, and as such his promise to purchase back the stock which was to be pledged for the ''repurchase price'' constituted an agreement of repurchase as in *Hulen* v. *Stuart.* As is said in *Williamson* v. *Marshall, supra,* which we again quote: ''The sole purpose of the present action, notwithstanding the form of the prayer of the complaint, is to recover from the defendants the sum of money agreed to be repaid in accordance with the terms of the agreement. . . . The consideration had passed to the obligor and the only duty imposed upon the defendants was the obligation to repay the sum of money specified. . . . Having alleged that the defendants had promised to pay the fair and reasonable value of the stock (here $13,000 in monthly instalments of $1,000) and for which, when determined by the court to be fair and reasonable, judgment is prayed, it is unnecessary to allege that plaintiff has been damaged in such sum.''

■ Appellant contends that respondent failed to prove the performance of the conditions of the lease which in paragraph 2 of the agreement was made a part thereof in this: "that the lessor (Altomont Creamery, Inc.), or its assignee, did furnish light, water, power or refrigeration, as provided in paragraph 4 of said lease." Paragraph 2 of the agreement refers only to the agreement not to engage in the business of selling ice-cream within the limits of Palo Alto for a period contemporaneous with a certain lease entered into between the parties and "to which said lease reference is hereby specifically made." The agreement, it seems, refers to the lease for but one purpose—to fix the term during which respondent's assignor should not engage in the ice-cream business in Palo Alto. Where reference is made in a contract to another writing for a specified purpose, such writing becomes a part of the contract for such purpose only (*Moreing* v. *Webber*, 3 Cal. App. 14 [84 Pac. 220]).

This disposes of the questions raised by appellant's specifications of error, and from what has been said it follows that the judgment should be and it is affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 3, 1929, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court, on August 1, 1929.

All the Justices present concurred.