[Civ. No. 13535.   Second Dist., Div. One.   July 20, 1942.]

KATHERINE P. JENSEN, Appellant, v. JONES MILLER, INC., LTD. (a Corporation) et al., Respondents.

468

Cryer & Jones for Appellant.

Harry Sutton, Charles R. Morfoot and George W. Zent for Respondents.

WHITE, J.—This is an action by a principal against her brokers to recover secret profits and commissions paid upon a sale of real estate. By her complaint plaintiff alleged that on or about June 20, 1939, she and her co-trustee authorized defendants Jones Miller, Inc., Ltd., and Harry Miller, as brokers, to procure a purchaser for certain described real property at a minimum price of $35,000 or such higher price as said defendants might obtain, and orally agreed that in the event that such purchaser was procured through the efforts of the named defendants, the latter would be paid a commission of five per cent of the amount of the agreed selling price. That thereafter, on or about July 15, 1939, defendants just named employed defendant L. L. Hullet to assist them in finding a purchaser for said real property and agreed with said defendant Hullet that in the event he should procure a purchaser he would receive as commission for his services the entire amount of the selling price of the property in excess of $34,125. The complaint further charged that defendants did not at any time report to plaintiff or her co-trustee the employment of said Hullet and that she and her co-trustee had no knowledge of the employment or the terms thereof, and that such employment was wholly without authority from plaintiff or her co-trustee. It was then alleged that on July 24, 1939, defendant Hullet procured one Jennie Grawoig as a purchaser of the property at an agreed price of $36,000 and obtained from said Jennie Grawoig a deposit

of $1,000 on the purchase price; that on the same day defendants placed the transaction in escrow. The complaint further charged that defendants did not ever report to plaintiff or her co-trustee the sale to said Jennie Grawoig, but that on the contrary the defendants "deliberately and with intent and purpose to deceive and to defraud plaintiff and her co-trustee, concealed and withheld from said trustees all knowledge and information relative to said sale to said Jennie Grawoig at and for said price of $36,000."

Plaintiff further alleged in her complaint that in furtherance of the alleged plan and scheme to deceive her and her co-trustee and to conceal from them the sale to Jennie Grawoig, the defendants caused one Charles E. Grimes and Wilma Grimes, his wife, to be named as vendors of the property in escrow and caused to be opened another escrow wherein plaintiff and her co-trustees were named as vendors of the property and the Grimes' named as vendees at a sale price of $35,000. Then followed allegations that no report of such proceedings was ever made by defendants to plaintiff or her co-trustee, and that neither they nor the Grimes' had ever been consulted or had any knowledge of said escrow or the use of their names therein. The complaint then charged that on July 28, 1939, without disclosing to plaintiff or her co-trustee any information whatever relative to any pending sale to Jennie Grawoig, defendants "falsely and fraudulently reported to plaintiff and to her co-trustee that they had procured a buyer for the above described property, to wit, one Charles E. Grimes, at a price of $35,000; that said sum of $35,000 was the best price they could obtain for the property, and the best price for which it could be sold under prevailing conditions"; that at the time this last mentioned information was transmitted to plaintiff and her co-trustee the defendants "well knew that said Grimes was not the purchaser of said property, at any price; that he was a mere 'dummy' being used by defendants in furtherance of their scheme to conceal from their principals" (plaintiff and her co-trustee) "all knowledge of the proposed sale of the property to Jennie Grawoig at a price of $36,000, and said defendants well knew that the simulated sale to Grimes . . . was solely for the purpose of placing the title to the property in Grimes to be immediately deeded to Jennie Grawoig."

By her complaint plaintiff further alleged that relying upon the representations of defendants that Charles E.

Grimes was the buyer of the property and that the sum of $35,000 was the best price for which the property could be sold, plaintiff and her co-trustee accepted and approved the sale upon the terms and conditions aforesaid and executed their deed to said property in favor of said Grimes. It was further alleged that the intent and purpose of defendants' activities in the use of the two escrows was to enable them to collect and obtain for themselves, and that they did collect and retain, in addition to the regular commission of five per cent, the difference between the amounts of the respective selling prices of the two sales, to wit, the sum of $1,000. In the prayer of her complaint plaintiff asked that defendants be required to account to her for the selling price of the property; that she have judgment against defendants for the sum of $1,750 paid to them as commission and for the sum of $1,000 allegedly taken and retained without authority by defendants out of the "true selling price of the property."

Defendants Jones Miller, Inc., Ltd., and Harry Miller filed an answer denying that they or either of them entered into any plan or scheme of concealment as charged in the complaint, or that the sale to Grimes was a simulated sale, or that they ever made any sale of the property in question to Jennie Grawoig for the price of $36,000 or any other price. These answering defendants also denied participation in any double escrow as alleged in the complaint or any double escrow for the purpose of obtaining a sum greater than the sum of $1,750 which they claimed was due them as a commission pursuant to their agreement with plaintiff and her co-trustee. These defendants specifically denied that they obtained any secret profit or any portion of the sum of $1,000 received in excess of the agreed sale price of $35,000.

The defendant Hullet filed a separate answer in which he denied participation in any scheme or plan for the purpose of defrauding plaintiff and alleged that he acted in good faith and made no concealments, statements or representations to any parties in connection with the transaction other than as was reflected in the escrows through which the transactions were consummated.

The cause was tried before the court sitting without a jury and resulted in a judgment for the defendants, from which judgment plaintiff prosecutes this appeal. No reporter's transcript has been filed, and this appeal comes before us on the judgment roll alone. ▪ Following trial of the action

the judge presiding thereat wrote a "memorandum for judgment," apparently for the purpose of assisting counsel in the preparation of findings and the framing of a judgment. The clerk included this memorandum among the documents contained in the purported judgment roll. We are invited by appellant to consider the findings of the court in the light of the aforesaid memorandum of the trial judge, it being contended that such memorandum becomes a part of the record by reason of the provisions of section 953 of the Code of Civil Procedure, as amended in 1919, and particularly the following language appearing therein:

". . . If it appears that there is any paper or record in the custody of the clerk of the trial court which was *before the trial court* but which is not included in the record on appeal, and an examination of such paper or record will assist in a determination of the appeal on its merits, the court in which the appeal is pending may, on motion of either party, or on its own motion, require the production of a certified copy of such paper or record, and the same shall thereupon be deemed a part of the record on appeal."

The provision just quoted has no reference to a document such as the memorandum prepared by the trial judge in the instant case. In the first place, such document was never "before the trial court," nor did it in any manner influence his decision. It was prepared subsequent to the rendition of such decision and simply as an aid to counsel, as heretofore pointed out, in drawing the findings and judgment. There are several other reasons why appellant's contention cannot be sustained. ▪ In the first place, the statute (Code Civ. Proc., § 670, subd. 2) clearly specifies what documents constitute the judgment roll, and manifestly the memorandum above mentioned is not one of the documents specified in the statute. Nor is any additional standing given to such a document because it is inserted in the judgment roll and certified as a part thereof. (*Sutcliffe* v. *Sutcliffe,* 220 Cal. 398, 401 [31 P. (2d) 195].) Though in some instances an appellate court may examine such a memorandum for certain purposes, it is well established that a reviewing court will not give consideration to such a memorandum for the purpose of defeating the trial court's judgment. ▪ Under a record such as is here presented, we must assume the absence of any conflict between the "memorandum for judgment" and the findings as made and signed by the trial judge; and

if there be any such conflict, we must presume that the memorandum was changed to conform to the findings as signed. (*Wittman* v. *Wittman*, 32 Cal. App. (2d) 184, 186 [89 P. (2d) 419].) Furthermore, this appeal being before us on the judgment roll alone, we must presume that evidence was introduced which would support the findings as made without any objection on the part of appellant, and that the facts so found were treated by all parties as issues properly before the court at the trial. A different situation might be presented if the entire record were before this court, but not otherwise. (*First Trust & Savings Bank* v. *Warden*, 18 Cal. App. (2d) 131, 133, 134 [63 P. (2d) 329].)

▮ The main and most important point urged by appellant is that while the findings are adverse to plaintiff as to the issue of actual fraud, in that the court found that the defendants did not conspire together to defraud plaintiff, there are no findings which operate to exonerate defendants of the charge of constructive fraud predicated on the claim that defendant brokers took advantage of a fiduciary relationship to mislead plaintiff to her prejudice. (Civ. Code, § 1573.) We are not unmindful of the universally recognized rule that where a fiduciary relationship has been established and the acts of an agent are questioned by his principal, the burden is cast upon the agent to prove that he acted with the utmost good faith toward such principal and that he made a full disclosure of all the facts relating to the transaction under attack. (*Schwarting* v. *Artel*, 40 Cal. App. (2d) 433 [105 P. (2d) 380].) But in the instant case the court found, and, we must assume, upon sufficient and competent evidence, that defendants Jones Miller, Inc., Ltd., and Harry Miller at no time employed defendant Hullet to aid or assist them in finding a purchaser for or making a sale of plaintiff's property, but on the contrary found that defendant Hullet was at all times acting as "an independent dealer and contractor." Further, the court found that defendant corporation, acting through its secretary, defendant Harry Miller, agreed to sell the property to Hullet or his nominee for a net price of $34,125, "which said net price was arrived at by deducting one-half of a 5 per cent commission of $35,000, or the sum of $875, from said price of $35,000." The court found that there was no conspiracy or plan between defendants to prejudice plaintiff, and a summarization of the court's findings indicates that it was found that plaintiff

agreed with defendant corporation and defendant Harry Miller to sell the property for $35,000 and pay them $1,750 as commission—in other words, to sell for a net consideration to her and her co-trustee of $33,250; that defendant Hullet, acting for himself and not in concert with his co-defendants, provided a buyer who would not pay $35,000, but would pay $34,125, and that defendant corporation and Harry Miller waived one-half of their commission, thereby effecting a sale of the property and paying to plaintiff and her co-trustee the amount agreed upon by them as consideration for such sale, viz., the sum of $33,250. True, defendant Hullet had a buyer for the property who would pay $36,000, and Grimes was used as a "dummy"; but the court found that defendant corporation and Harry Miller were not parties to such transaction, had no knowledge thereof, and never profited thereby. Under the court's findings Hullet never was the agent of plaintiff and her co-trustee, while he, as well as defendant corporation and defendant Harry Miller, was absolved of participation in any conspiracy or plan to effectuate a sale of the property under circumstances which would enrich plaintiff's agents beyond the terms of the agreement between such agents and plaintiff principal. It was also found that none of the defendants was guilty of any concealment, misrepresentation, fraud or deception, or of receiving any unauthorized profit in connection with the sale of the property. In short, the findings negative each and every material allegation contained in the complaint. If a specific finding upon an allegation incident to the charge of constructive fraud or deception has been omitted, plaintiff may not complain, for further findings, if adopted by the court, upon any of the issues of this case would be bound to be adverse to appellant. Remembering the rule that findings should be construed to uphold rather than to defeat a judgment (*Ensele* v. *Jolley,* 188 Cal. 297, 302 [204 Pac. 1085]), it follows, under the circumstances here present, that the failure to adopt more complete findings is not reversible error. (*Hulen* v. *Stuart,* 191 Cal. 562, 572 [217 Pac. 750].)

For the foregoing reasons, the judgment is affirmed.

York, P. J., and Doran, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 14, 1942.