[S. F. No. 693.   Department Two.—December 30, 1897.]

## J. C. RUED, Assignee, etc., Appellant, v. F. T. COOPER and WARNER STAUF, Respondents.

VOID CONTRACT—SALES OF STOCKS ON MARGIN—ACTION FOR MONEY PAID—DEFENSE—ACCORD AND SATISFACTION—INSUFFICIENT PROOF—SETTLEMENT OF STOCK ACCOUNT—RECEIPT IN FULL—BASIS OF VALIDITY OF CONTRACT. In an action by the assignee of an insolvent debtor to recover money paid by the insolvent debtor to stockbrokers under a void contract for the purchase and sale of stocks on margin, evidence of a mere settlement and receipt in full of the balance of the stock account, consisting of the dealings under the contract for the purchase and sale of the stocks upon a margin, upon the assumption that those dealings were regular and legal, without proof of any agreement to settle any claim for the recovery of the money illegally paid under the void contract, or that such claim was known or considered, or referred to in any manner upon the settlement, does not sustain a defense of accord and satisfaction of the claim sued upon.

ID.—EVIDENCE—IGNORANCE OF LEGAL RIGHTS.—In such action, it is error to refuse to permit the insolvent debtor to answer a question as to whether he knew of any law authorizing the recovery of money paid in on margin stock transactions at the time of signing the receipt in full of the balance of stock account; nor is it a valid objection to such question that the witness was presumed to know the law, and could not be excused for ignorance of it.

ID.—MAXIM—IGNORANCE OF LAW—EXCEPTION—MISTAKE OF FACT ARISING FROM MISTAKE OF LAW—RELIEF IN EQUITY.—The maxim, *Ignorantia legis neminem excusat*, though applicable generally to mistakes of law pure and simple, does not apply to the exceptional case where a party has acted in ignorance of his antecedent and existing private legal rights, and under a misapprehension which involves a mistake of fact arising out of a mistake of law as to the existence of a legal right or title, which there could not have been an intention to part with, while in ignorance of it; but, in such case, equity will grant relief from the legal effect of instruments which surrender such unsuspected right or title.

ID.—CODE PROVISIONS—IGNORANCE OF FACT—MISAPPREHENSION OF LAW—LIMITED EFFECT OF GENERAL RELEASE.—A settlement with stockbrokers

and receipt in full of a balance of the stock account, made in igno-
rance of a legal right to recover moneys paid to them for the pur-
chase and sale of stocks on margin, if regarded as involving a mis-
take of fact, involves unconscious ignorance of a fact material to the
contract, within subdivision 1 of section 1577 of the Civil Code, and,
if regarded as involving a mistake of law, involves a misapprehen-
sion of the law by all parties, all supposing that they knew and un-
derstood it, and all making substantially the same mistake as to the
law, within section 1578 of the Civil Code; and regarding the re-
ceipt as a general release, it could not, under section 1542 of the
Civil Code, extend to claims which the creditor did not know or
suspect to exist in his favor at the time of executing the release,
which, if known by him, must have materially affected his settle-
ment with the debtor, nor is it material that his ignorance of the
fact of its existence was occasioned by his ignorance of law.

APPEAL from a judgment of the Superior Court of the City
and County of San Francisco and from an order denying a new
trial. J. M. Seawell, Judge.

The facts are stated in the opinion.

Henley & Costello, and R. R. Bigelow, for Appellant.

James M. Allen, and Eugene R. Garber, for Respondent.

HAYNES, C.—The plaintiff is the assignee in insolvency of
C. A. Macomber. The defendants were formerly copartners as
Stauf & Cooper, stockbrokers engaged in buying and selling
shares of stock in mining and other corporations. This action
was brought to recover from the defendants a large amount of
money advanced by Macomber to the defendants for the pur-
pose of buying, carrying, and selling shares of stock in mining
corporations for said Macomber, upon a margin, under a con-
tract for that purpose.

The cause was tried by the court. and written findings were
filed and judgment entered for the defendants, and plaintiff ap-
peals from the judgment and from an order denying his mo-
tion for a new trial.

The court found the agreement to have been made as alleged,
and that pursuant thereto, between January 21, 1887, and Au-
gust 19, 1887, the defendants bought and sold for Macomber a
large number of shares of stock in various mining corporations
upon a margin, and that between said dates Macomber advanced

and paid to defendants under said contract three thousand nine hundred and ninety-three dollars and seventy-nine cents; but the court further found that defendants' second defense was true, and upon that finding gave judgment for defendants.

Said second defense was, in substance, that on July 19, 1887, defendants paid to Macomber one hundred and eighty-eight dollars and fifty-seven cents, and delivered to him certain shares of stock in certain mining corporations, and "that said sum of money and said shares of stock were received and accepted by said Macomber in full payment, settlement, and satisfaction of the claim, demand, and cause of action set up in said amended complaint."

Two grounds are presented upon the record, upon which appellant claims the judgment should be reversed: 1. That the evidence does not justify the finding in favor of the defendants upon their said second defense; and 2. That the court erred in sustaining defendants' objection to a question put to Macomber by counsel for plaintiff.

Section 26 of article IV of the constitution, among other things, provides as follows: "All contracts for the sale of shares of the capital stock of any corporation or association, on margin, or to be delivered at a future day, shall be void, and any money paid on such contracts may be recovered by the party paying it by suit in any court of competent jurisdiction."

The court below and counsel for respondent treats said second defense as an accord and satisfaction. The evidence relating thereto is brief.

Mr. Macomber's testimony in chief was as follows: "I remember that a certain receipt was exhibited to me here and introduced in evidence, having been given by me to the defendants in this case at the time I wound up my stock transactions with them. At the time the receipt was given, or before then, nothing was said or passed between myself and the defendants in respect to any cause of action I might have to recover back what moneys I had paid on the stock transactions."

"Mr. Henley.—I will ask you now, if you, yourself, knew of any instance of any law in the constitution of this state, or of any law at all, authorizing the recovery of money paid in on

margin stock transactions, at the time of the signing of that
receipt?"

The question was objected to as "irrelevant, immaterial, and
incompetent; that he is presumed to know the law." Said ob-
jection was sustained, and that ruling is assigned for error.

Defendant Cooper testified: "On July 19, 1887, I made a set-
tlement with Mr. Macomber, and he signed the following re-
ceipt:

"'Date July 19, 1887. .

"'Received of Stauf & Cooper $188.57, 200 Impl. 100 Confi-
dence, bala. acct. in full.        C. A. MACOMBER.' ·

"I asked him to give me a receipt in full.   I delivered him the
money and stocks and took that receipt."

It was further testified that the only transaction after that was
that defendants sold certain stocks for Macomber which he
brought to them to be sold, and which were sold for cash and
accounted for, and a receipt covering that transaction was taken
on August 13, 1887.

The court below, in its opinion (a copy of which is in the
transcript), said that "the only question is whether there has
been an accord and satisfaction."

The code defines an accord as "an agreement to accept, in
extinction of an obligation, something different from or less than
that to which the person agreeing to accept is entitled."   (Civ.
Code, sec. 1521.)

That the settlement of July 19th was of the dealings under
the contract for the purchase and sale of mining stocks upon a
margin, and upon the assumption that those dealing were reg-
ular and legal, cannot be doubted.   Macomber expressly testi-
fied that nothing was said at that time, or before, about the mon-
eys he had advanced, and which the court found to have been
three thousand nine hundred and ninety-three dollars and sev-
enty-nine cents, nor was that statement disputed by Cooper.
The payment of the money was therefore of a sum conceded to
be due under the terms of the contract.   As to the shares of
stock that were delivered, the court concluded that, as "it does
not appear that the stocks were received at any agreed price,
the presumption arises that they were received in full satisfac-
tion of all demands which Macomber had against defendants,

and that no inference should be drawn that the transaction was
not intended as a full settlement from the fact that the stocks
were not then of a value equal to the amount of money which
Macomber was then entitled to recover."

This conclusion would have been right if it had appeared that
the present claim of the plaintiff had been known or considered.
There was no evidence tending to show that the stock was deliv-
.ered for any such purpose, or tending to show that the stock so
delivered was the property of the defendants; while the pre-
sumption is "that a thing delivered by one to another belonged
to the latter." (Code Civ. Proc., sec. 1963, subd. 8.)

There was no dispute or controversy, and hence no agreement
to accept something different from, or less, than that to which
Macomber was legally entitled, and therefore there was no ac-
cord; and the payment of a part of the whole debt due is not a
good satisfaction, even if accepted, unless the amount of the
claim is disputed; and there was not then, or theretofore, any
controversy, both parties—so far as the record discloses—having
acted upon the supposition that the contract and the transac-
tions thereunder were valid; while the cause of action here in-
volved is for moneys advanced to defendants under a void con-
tract.    Unless, therefore, the settlement and receipt of July 19,
1887, operated in some other way to extinguish or bar said cause
of action, the judgment appealed from cannot be sustained.

The testimony of Mr. Macomber was that nothing was said
at or before the settlement as to his right to recover back the
money he had advanced; and it was then sought to be shown
that he did not know that he had such right.    The question put
for that purpose was objected to upon the ground that it was
immaterial—that he was presumed to know the law.

The discussion of the case by counsel is largely devoted to the
question as to whether relief can be granted from such mistake
as that made by Macomber, the defendants regarding it as a
pure mistake or ignorance of law, to which the maxim, *Ignoran-
tia juris neminem excusat,* should be applied.

As to the general rule that mistake of law, pure and simple, is
not adequate ground for relief, there is no controversy; nor is
.there any serious controversy as to the proposition that there are
exceptions to that general rule.

We do not, however, regard this as a mistake of law, pure and simple, but as belonging to a distinct class recognized by law writers of acknowledged ability and sanctioned by numerous decisions. This class is defined by a general rule formulated by Professor Pomeroy, concerning which he says: "The number of decisions which support it, and which it explains, is very great." That rule is as follows: "Wherever a person is ignorant or mistaken with respect to his own antecedent and existing private legal rights, interests, estates, duties, liabilities, or other relation, either of property or contract, or personal status, and enters into some transaction, the legal scope and operation of which he correctly apprehends-and understands, for the purpose of affecting such assumed rights, interests, or relations, or of carrying out such assumed duties or liabilities, equity will grant its relief, defensive or affirmative, treating the mistake as analogous to, if not identical with, a mistake of fact." (2 Pomeroy's Equity Jurisprudence, sec. 849, p. 1178.)

So, in 1 Story's Equity Jurisprudence, section 122, page 131, it is said: "Indeed, where the party acts upon the misapprehension that he has no title at all in the property, it seems to involve in some measure a mistake of fact, that is, of the fact of ownership arising from a mistake of law. A party can hardly be said to intend to part with a right or title of whose existence he is wholly ignorant; and, if he does not so intend, a court of equity will in ordinary cases relieve him from the legal effect of instruments which surrender such unsuspected right or title."

That there are decisions which are inconsistent with the foregoing statements of the law is not disputed, but that the great weight of authority, both English and American, sustains the views expressed in the above quotations is beyond serious controversy.

A discussion of the many cases upon this subject, however interesting or instructive it might be, cannot be indulged within the limits of an opinion; nor is it necessary to give a construction to the provisions of the Civil Code upon the subject of mistake (Civ. Code, secs. 1577, 1578), though we see no conflict between those sections and the law as stated by Pomeroy and Story, since, if it be regarded as a mistake of fact, this case is within subdivision 1 of section 1577, and if a mistake of law,

upon the record as it is before us, it is within subdivision 1 of section 1578.

But there is another provision of the code upon which this case may be decided, and which is in clear accord with the two authorities we have above quoted.

We have seen that the payment of the money and the delivery of the stock could not be held to be an accord and satisfaction; and since there is no pretense that the demand has been specifically released, or has otherwise been paid or satisfied, if the receipt can operate to defeat plaintiff's action it must do so as a general release.

Section 1542 of the Civil Code provides as follows: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with his debtor."

This section, it will be observed, does not base the right to relief upon any fraud or concealment by the debtor or other person. It is sufficient that the creditor does not know or suspect its existence; nor is it material that his ignorance of the fact of its existence was occasioned by his ignorance of law.

It was, therefore, competent and material to show by Macomber that when he gave the receipt he did not know or suspect that he had a legal claim against the defendants for the money he had advanced to them in these marginal stock transactions. The question put to Macomber was evidently for the purpose of showing that he did not know that he had a right to recover the money he had advanced to the defendants, but it should have been directly to the point whether he knew or suspected that he had such right.

It may be thought that the plaintiff's claim does not commend itself to the equitable consideration of the court. Macomber is certainly entitled to little sympathy, but the constitutional provision, under which this claim is made, is the declaration of a public policy, and in that light the case should be considered.

We advise that the judgment and order appealed from be reversed and a new trial ordered.

Belcher, C., concurred.

Britt, C., concurred in the result.

For the reasons given in the foregoing opinion the judgment
and order appealed from are reversed and a new trial ordered.

Harrison, J., Garoutte, J., Van Fleet, J.

Hearing in Bank denied.

McFarland, J., dissented from the order denying a hearing in
Bank.