[Civ. No. 6219. First Appellate District, Division One.—April 26, 1928.]

SAMUEL KLEGMAN, Respondent, v. J. J. MOYER, Appellant.

Pierre A. Fontaine for Appellant.

Edward R. Eliassen and C. Leonard Rosenberg for Respondent.

PARKER, J., *pro tem.*—This action was brought by plaintiff to recover damages for the alleged breach by defendant of a certain contract to exchange real properties. The case was tried without a jury, and the trial court awarded plaintiff damages in the sum of $5,000. A motion for a new trial was made and denied. Defendant presents this appeal.

Plaintiff and defendant through the same agent signed and delivered separate exchange agreements. Plaintiff was to exchange certain described real property in Oakland for real property of defendant in the same city, and by the terms of the exchange agreement and as an additional consideration the defendant was to transfer to plaintiff a certain note and deed of trust covering property in Madera County. In the contract of exchange it was provided that plaintiff was to trade his property subject to a first encumbrance in the sum of $20,000, bearing interest at the rate of six per cent per annum and due two years from date; that in addition to this first encumbrance the defendant was to execute to plaintiff a note and deed of trust secured by the same property in the sum of $2,500, which should be a second encumbrance.

It plainly appears from the agreements of exchange that if the same had been fully consummated plaintiff would deed to defendant all of the property described and belonging to plaintiff, and would receive from defendant certain real

estate encumbered to the extent of $8,000, and also an assignment of a note owned by defendant and secured by deed of trust on certain Madera County real estate, in the amount of $12,500, and in addition thereto plaintiff was to receive back a note, secured by deed of trust on the property by plaintiff conveyed, in the sum of $2,500, and a cash payment of $500. By the terms of the exchange agreements the property thus conveyed by plaintiff was to be conveyed "subject only to first encumbrance of $20,000." It is around this provision of the agreement that much of the present controversy turns. Every other particular of the contemplated exchange was satisfactorily arranged. To present the issue it will be necessary to go further into the facts.

After the execution of the exchange agreements each of the parties proceeded to consummate the deal, and for that purpose initiated an escrow with a title company. The plaintiff Klegman on depositing deed executed by himself and wife delivered to the title company his instructions as follows: "J. J. Moyer and wife are to execute a first deed of trust and note for $20,000"; then follow the remaining conditions, concerning which there is no dispute. On the same date defendant Moyer, upon depositing deed of himself and wife to the property conveyed by him and an assignment of the trust deed for $12,500 on the Madera County property, gave his written instructions as follows: "You are to receive for the account of J. J. Moyer good and sufficient deed for that certain property (describing property of plaintiff) on which I am to execute a note and deed of trust as a first lien in the sum of $20,000." By the terms of the original exchange agreement the defendant Moyer was to guarantee the payment of the note secured by deed of trust on the Madera lands. However, when he delivered the note and deed of trust to the title company the note was indorsed "without recourse," and the guaranty indorsement thereon was canceled. This brought about some discussion but was finally settled by Moyer executing the guarantee. Then, after copies of Moyer's instructions to the title company had been given plaintiff, Moyer, without the knowledge or consent of Klegman, went to the office of the title company and, taking the original instructions, made a change therein. Where the instructions contained the clause "I am to execute

a note and deed of trust," Moyer struck out the word "execute" and wrote in ink the word "assume," thus making the clause read "I am to assume a note and deed of trust." The transaction continued. The Hibernia Savings and Loan Society had a mortgage or deed of trust against the Klegman property in the amount of $16,500. Klegman proceeded to have the encumbrance removed and to arrange for the $20,000 encumbrance which was to remain on the property when transferred to Moyer. Accordingly Klegman prepared a first mortgage on his property in the sum of $20,000, which was to be executed by Moyer and wife and given to secure a note for $20,000 payable to Klegman and signed by Moyer and his wife. Then Klegman was to assign said note and mortgage to the bank. When the mortgage thus prepared was presented to Moyer he made certain objections thereto. He objected to certain clauses pertaining to acceleration of due date upon transfer, and also the provisions thereof specifying the kind of money with which the obligation might be discharged. In the controversy ensuing each party was represented by counsel, and there is a sharp conflict as to just what was said or done at the time. Supporting the judgment there is evidence to the effect that neither Moyer nor his counsel objected to the execution of this mortgage as such, provided the objectionable features were eliminated. Klegman did have all of the necessary changes made, and then Moyer took the position that he would prefer to execute the note and mortgage direct to the bank or to whomsoever it was intended should hold it. After further negotiations the whole transaction failed and no exchange was made.

The court below found that the failure to consummate the exchange was due to the acts and conduct of Moyer, and that Klegman at all times was ready, able, and willing to proceed and had done all things legally required of him. The court further found that as the result of the breach on the part of Moyer plaintiff was damaged in the amount of $5,000, for which sum plaintiff was awarded judgment.

Appellant advances many reasons why the judgment should be reversed but all of these center about a few main contentions. It is contended that the rights and duties of both parties are measured and controlled by the first agree-

ment of exchange; that this agreement expressly provided that the property of plaintiff should be conveyed subject to an encumbrance of $20,000, and this contemplated a then existing lien; that the demand of plaintiff that defendant Moyer himself execute a mortgage on the premises was a substantial deviation from the terms of this contract, and, if made a condition of the exchange, it would be a new and different agreement and one upon which the minds of the parties had never met and unenforceable, and if insisted upon, as it was, served as sufficient reason for Moyer's withdrawal from the exchange. Further, it is appellant's claim that in any event, conceding for the argument only that plaintiff might justly demand the execution of the mortgage by Moyer, yet he could not demand such an act from Moyer and his wife. In other words, the wife was not a party to the transaction in any sense.

It will be noted that the first written instruments between the parties were dated January 23, 1924. These instruments comprised two separate agreements of exchange, identical in language, with the difference only in the names of the parties. The contracts ran to Mutual Realty Co., and in each instrument this company was designated as agent of the owner. The contracts of exchange or the offers of exchange provided that if accepted the exchange should be closed by the parties at the office of Mutual Realty Co. This part of the exchange was evidently abandoned. On January 25, 1924, each of the parties signed and delivered his instructions to the title company, which have been hereinbefore referred to. In the offers of exchange, as noted, the plaintiff was to convey his property and defendant was to accept this property "subject to first encumbrance in the sum of $20,000, bearing interest at the rate of six per cent per annum, payable and due as follows: on or before two years from date." This provision is not clear and unambiguous, and no definite understanding of the exact agreement results from a reading thereof, conceding that the instrument should be read as a whole. It will be noted that it does not, by reference or otherwise, attempt to identify an existing encumbrance. A fair construction would leave the idea that the encumbrance was to be one created for the purpose of the exchange in an attempt to equalize values.

The term of the first encumbrance, namely, two years *from date,* lends further strength to the inference that no prior encumbrance was in the minds of the parties. The further restriction as to the amount of interest to be charged in the encumbrance doubtless was intended as a specification to be given a lien to be created rather than as descriptive of one already in existence. The defendant and appellant contended that by the wording of the exchange offer it was contemplated that plaintiff should negotiate a loan for $20,000 on the property, and that defendant should take the property subject thereto. However, within two days after the signing of the exchange offer the defendant in his written instructions to the title company said, "I am to execute a note and deed of trust as a first lien upon the property," and then later without the knowledge of plaintiff this was changed on the original to read "I am to assume a note and deed of trust as a first lien." It will be seen therefrom that the construction adopted by defendant in either case differed from a taking of the property "subject to encumbrance of $20,000." ■ The term "assume" has a meaning distinguished from a mere taking subject to a mortgage or other lien. See 18 California Jurisprudence at pages 44 and 45. From the cases there cited it follows that there is but little distinction between the assumption of a mortgage and the execution of a mortgage, speaking very generally and with particular reference to a case such as this.

■ The conclusion following the foregoing is that the provision of the contract "subject to first encumbrance of $20,000 etc." was a provision not so free from uncertainty or ambiguity as to preclude the trial court from taking evidence as to the true meaning and intent thereof. This the trial court did, over the objection of defendant. The objection was without merit, as is likewise the assignment of error predicated thereon.

■ The testimony taken disclosed that before the defendant Moyer executed the offer or contract of exchange on January 23, 1924, there was a discussion between Moyer and the agent selected by him to negotiate the deal. Immediately it may be noted that this agent was authorized to act for both of the parties as a broker through whom and through whose efforts the entire transaction was being nego-

tiated. The agent told Moyer that under the terms of the contract about to be signed Moyer was to execute the mortgage on the property, and that Klegman was to obtain the loan. To this Moyer made no objection, and understood and was willing to execute the $20,000 mortgage. The testimony further showed that when the mortgage was presented to Moyer to execute, the ground of his refusal was not that the agreement did not so provide but his objection went to the form of the mortgage instrument. Moyer said at that time—which was after he had secured the aid of able counsel —"When you bring the $20,000 mortgage and modify that language in the note and mortgage, why then we will do business; we will exchange." However, when the desired changes were made he refused to execute the mortgage and the contemplated exchange failed.

Appellant throughout is insistent that the escrow instructions do not constitute in themselves the contract between the parties, but that these instructions depend entirely upon and are inseparably tied to the original contract or agreement of exchange. His contention is thus set forth: "The said instructions were intended solely to provide for the performance of the contract of exchange dated January 23, 1924, that supported them."

Adopting this contention—and it is urged strenuously throughout appellant's brief—it must follow that appellant's escrow instructions then reflect his idea of the construction to be placed upon and the meaning and intent of the clause regarding the $20,000 mortgage. Appellant also recognizes the fact that when the word "execute" was stricken out and the word "assume" inserted in place thereof there was indicated again the understanding of the parties. However, appellant argues thus: "Surely this learned court is to be guided by the intentions of the parties rather than be bound by any technical legal definition. Among the laity the expression 'assume' is invariably and interchangeably used to mean 'subject to,' and this eminent court cannot fail to take cognizance of this fact as common knowledge."

If the words are thus interchangeable it follows that "subject to" may be intended to mean "assume." Appellant is not only willing but anxious that the rule of construction which seeks to ascertain and follow the intent of the parties

be invoked in his behalf, but objects strenuously to such a procedure whenever its effect might be in aid of his adversary.

Appellant further admits that the clause with reference to the $20,000 did contemplate the future act of placing this encumbrance on the property, which act was to be performed by "some one" but not by appellant.

The force of all these arguments coupled with the facts as presented compel the conclusion that the clause itself and its meaning are obscure and indefinite to the extent of requiring oral evidence in aid of the construction. And from the evidence thus taken we find sufficient to support the finding that the contract did provide that defendant was to execute and deliver the encumbrance intended as a part of the exchange.

■ Appellant argues that the instructions, even if accepted, constituted a new contract, and that the new contract was not pleaded, or, if the instructions operated as a modification of the original agreement for exchange, then the modification was not pleaded. This defect in pleading, appellant continues, resulted in a variance between pleading and proof, and the contract which was the basis of recovery was not the contract sued upon.

The conclusions hereinbefore arrived at dispose of these contentions without further comment.

■ It is further contended that inasmuch as plaintiff Klegman inserted in his instructions to the title company that Moyer and his wife were to execute the mortgage he thereby added an additional requirement to the contract by bringing in a new party, the wife, and insisted thereby upon a condition which defendant Moyer was justified in refusing to meet.

It is true that the wife of defendant Moyer was not a party to the agreement of exchange. It is true, however, that the deed tendered to Klegman was a deed running to J. J. Moyer and Ida Moyer, his wife, as grantees; and it would be obvious that if the title rested in both grantees any encumbrance thereon should cover the interest of both. Without objection Moyer deposited in escrow all of the other instruments signed by Mrs. Moyer, his wife. For instance, Mrs. Moyer signed the deed conveying the property to be

exchanged by Moyer. She signed the note and second deed of trust upon the Klegman property. She signed the assignment of the deed of trust on the Madera County property; in fact, she signed everything that Moyer signed.

Defendant Moyer in the court below urged his willingness to proceed with the exchange save and except on this one question of the $20,000 encumbrance. Not once in all of the negotiations or in the controversy did he object to the demand that Mrs. Moyer join in this encumbrance. On his examination after Moyer had given his version of the contract, and had contended that the mortgage was not to be executed by him, he testified as follows: ''Q. Until February 19, 1924, did you know that Mr. Klegman had in his mind to have you sign this note and deed of trust for $20,000? A. No, it was absolutely a surprise to me. Q. That was a surprise to you? A. Absolutely a surprise to me, because otherwise I would have had the wife down there and made arrangements for it.''

Apparently throughout the attempt to exchange it was taken for granted that the wives of the parties should join in all transfers. Appellant was ready to accept the deed running to himself and wife, and now urges that the demand of plaintiff that the wife join in the mortgage back was unwarranted. This contention cannot be sustained. The deeds tendered by defendant as well as the other transfers and assignments bore the signature of his wife; and it was and is fair to assume that she might have had some interest in the property conveyed. Without entering into any discussion of the law of community property it will suffice to say that as a rule one dealing with a married man is to some extent at a peril when he neglects to consider what the interest of the wife might be. And particularly here, where the point was not raised in the trial court, and where every act and writing was without question so far as the present contention goes, it would be an extreme holding to support the contention of appellant. And this is true for the further reason that appellant did or does not offer to execute the mortgage himself nor has he tendered the executed encumbrance without the additional signature.

█ Appellant contends that he did raise the question in the court below, but this contention is based upon the notion

that by a general objection to the offer of the instructions this specific objection was included.

If appellant was to receive the deed of plaintiff's property as running to Mrs. Moyer as well as himself, the effect of the instrument would be to vest the wife with an interest therein, and, as stated, this interest should be impressed with the mortgage lien. If appellant had any just ground for complaint he was called upon to express it at the time and not merely as an afterthought in seeking some way out of his contract. In appellant's brief he states: "There is not one scintilla of evidence in the record to show that a note or mortgage of $20,000 was ever tendered by respondent or by anyone in his behalf to the wife of appellant for her to execute, *nor was there ever any demand made upon appellant's wife so to do.*" The very next sentence reads as follows: "No more convincing evidence may be found in the record of the fact that the minds of respondent and appellant never did meet upon this matter of the execution of a note and mortgage for $20,000 than the conduct of respondent himself in constantly and inexorably demanding of appellant that both he, appellant, and his wife, execute said note and mortgage for $20,000."

The wife was ready and willing to sign all other papers, and the record shows that she was familiar with the transaction. Obviously the demands of respondent could not have been so insistent if the request was never brought to her. Appellant in arguing on the escrow instructions always insists that these were more or less unimportant as being merely the means each party was adopting to carry out his contract. To such an extent does he argue that he claims that when he changed the wording of his escrow instructions he was within his rights for the reason that these instructions were merely, as it were, suggestions. If this is correct it would seem also that the suggestion that the wife join in the execution of the mortgage was likewise only a tentative proposal. And, as no objection was made to it at the time and apparently acquiesced in so far as mere execution was concerned, the point is not sharp enough to puncture the judgment.

Appellant urges that plaintiff cannot maintain the present action for the reason that prior to the commencement thereof the said plaintiff had instituted an action in the superior

court of Alameda County wherein he sought specific enforcement of the contract of exchange. The contention is thus made: "Said remedies are inconsistent, and the election of one is deemed the abandonment of the other. Plaintiff's present action to recover damages in lieu of specific performance cannot be successfully maintained until he has first established his right to specific performance." ■ However, we do not consider that we are called upon to pass on this question. In the first place the point is presented here for the first time and was not raised in the pleadings nor at all in the court below. ■ Secondly, there is no record before us sufficient to sustain the contention. In the court below defendant offered in evidence a part of the complaint in the action for specific performance. The offer was made under the following circumstances: Plaintiff had testified concerning the difference in value between the properties to be exchanged. This testimony was in support of plaintiff's claim for damages. Defendant's counsel on cross-examination asked plaintiff if he had not filed a complaint in another action in which complaint he had stated that the transaction was in all respects just and fair. The complaint was produced and these proceedings were had: "The Court: Make your offer in the legal way. Mr. Fontaine: We will offer it in evidence. The Court: Do you offer the whole thing? Mr. Fontaine: No, just the particular portion of it. The Court: Read it."

Upon the formal offer the evidence was restricted as follows: "And I offer this particular portion of that only which reads as follows: 'That said agreement and the terms and conditions thereof aforesaid were and are in all respects just and fair and reasonable between the parties hereto.'" The admission in evidence followed the offer. Therefore we have only the complaint before us restricted to the particular portion thereof, and no other record of the alleged suit in specific performance. A detailed statement was offered purely for purposes of impeachment, and the offer restricted to the particular portion relied on for that purpose. For the reasons given we decline to pass upon this question of election of remedies and the effect thereof.

Lastly appellant contends that the findings are insufficient to support the judgment.

■ The complaint alleged the contract and its breach and then alleged ''That by reason of the premises and because of defendant's refusal and neglect and failure to perform his part of the aforementioned agreement plaintiff has been damaged in the sum of $15,500.00.'' The answer denies this allegation specifically, denying further that plaintiff has been damaged in any sum or at all. The finding of the trial court is ''That it is true, by reason of the premises, and because of defendant's refusal and neglect and failure to perform his part of the aforesaid agreement, plaintiff has been damaged in the sum of five thousand dollars.'' The judgment is that plaintiff do have and recover the sum of $5,000. Appellant argues that it was the duty of the trial court to find specifically wherein plaintiff was damaged by the acts or omissions of defendant; that the trial court did not make a finding as to market value of the respective real properties of respondent and appellant, and in the absence of such a finding the trial court could not render a proper judgment.

It is appellant's theory that the measure of damages is controlled by sections 3306 or 3307 of the Civil Code. Appellant concedes that the action is for damages resulting from breach of agreement to buy real property, and the code section 3307 reads: ''The detriment caused by the breach of an agreement to purchase an estate in real property is deemed to be the excess, if any, of the amount which would have been due the seller under the contract over the value of the property to him.'' The whole theory upon which this phase of the case was tried in the court below was that the value of the property which defendant Moyer agreed to convey was greater by $15,000 or more than the value of the Klegman property, and that by reason of the breach Klegman was damaged to the amount of the difference. Many witnesses were called, and the whole controversy as to damages hinged upon this point. The finding of the court is necessarily a finding that the difference in value was the sum of $5,000. All parties understood or must have understood the finding in that light, and to reverse the cause now merely to require that the method of computation be set forth would seem a needless and useless procedure. There was abundant evidence in the record to support this conclusion of the trial court, and no interpretation can be

placed on the finding other than that this was the trial court's conclusion. If the court had specifically set forth in the findings the value of plaintiff's property, and then the value of defendant's property, and by a process of simple computation then set forth the result, it would possibly have been more detailed. But, with the controversy hinging alone upon the question of value and the liability contingent upon the amount of difference between the properties, no one was misled as to the basis of the court's finding or as to the values found. If sufficient can be gathered from the whole of the findings of the court that material issues are fairly determined, the findings will support the judgment (*Berry* v. *Crowell*, 55 Cal. App. 537 [203 Pac. 835]). From the facts found and from the judgment ordered it is evident, in the light of the entire record, that if more complete findings had been made they would have been adverse to the contentions of appellant. If that be so, the failure to find further is not ground for reversal (*Krasky* v. *Wolpert*, 134 Cal. 338 [66 Pac. 309]). We are entitled to draw necessary inferences from the findings in order to support a judgment (*Hulen* v. *Stuart*, 191 Cal. 571 [217 Pac. 750]). In the case of *Erskine* v. *Marchant*, 37 Cal. App. 590 [174 Pac 74], we find this language: "It is further contended that in awarding damages the court did not take into consideration the difference between the entire commission for each sale and what it would cost the plaintiff to make the sale. While it does not appear what elements the court considered in ascertaining the amount of damages, there was nothing in the court's finding to show that those costs and expenses were not taken into consideration. It has been held that courts may find damages in a lump sum, and that any uncertainty in the findings is to be construed so as to support the judgment rather than to defeat it. The trial court had before it the evidence of the sales made by plaintiff and defendant prior and subsequent to the breach of the contract, from which it could form a judgment as to the amount of plaintiff's loss, and from the record before us we cannot say that the trial court erred in estimating the damages."

The same rule is stated in 8 California Jurisprudence, 878, and cases cited. The great prejudice which appellant claims results to him from a finding of general damages is more

imaginary than real. Many cases of this sort are submitted to a jury for determination under the general issue, and in no case does the verdict specify the values found, and in no case is it rendered difficult to determine the mode adopted in arriving at the jury's conclusion. This is mentioned merely to indicate that experience has not demonstrated or even suggested the necessity of always supporting a judgment for damages by diagraming the process of calculation leading to the conclusion.

The order of the trial court denied defendant's motion for a new trial. We find no error in such order.

Judgment affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 25, 1928.

All the Justices concurred.