[Civ. No. 7731. First Appellate District, Division Two.—March 30, 1931.]

WILLARD C. WARNER et al., Appellants, v. TAFT LAND & DEVELOPMENT COMPANY (a Corporation) et al., Respondents.

Eugene C. Campbell for Appellants.

Clock, McWhinney & Clock for Respondents.

PARKER, J., *pro tem.*—This is an action for the rescission of an executory contract to purchase certain real estate in the county of Los Angeles upon the ground of fraudulent representations. The main grounds urged for a reversal of the judgment, which was in favor of the defendants, involve the sufficiency of the findings of the trial court. It is urged by appellant that the so-called findings do not disclose what facts were found, if any, and that the said findings are hopelessly in conflict with each other and also that material issues are left entirely without finding of any sort. These contentions, if correct, would go far towards compelling a reversal of the judgment; indeed, little further inquiry would be necessary.

It was alleged in the complaint that C. A. Campbell solicited plaintiffs to purchase the lot in question and to enter into a contract for the purchase of the same and that he represented and stated as a fact to said plaintiffs certain things, enumerating them in detail. For the purpose of this discussion it might be admitted that the facts thus alleged to have been stated were material and if untrue would, with other elements present, suffice to sustain plaintiffs' cause of action. It was then alleged that each and every of said representations and statements were untrue and known by said Campbell to be untrue when he made the same and that said Campbell made said false statements and misrepresentations in order to cheat and wrong the plaintiffs and to induce them to enter into the contract. These allegations were denied and thus issue was joined thereon. It may be noted, at this stage, that a firm known as Deeble and Myers were the selling agents of defendant, Taft Land and Development Company, and that said firm had authorized one I. H. Lunt to find purchasers for said property and that C. A. Campbell was a salesman employed

by Lunt. The findings of the trial court are as follows: That it is not true that on or about the thirtieth day of July, 1926, Deeble and Myers or C. A. Campbell made any false or fraudulent misrepresentations of existing facts in order to induce plaintiffs to purchase the property (describing the same); nor, for the purpose of inducing them to enter into a written contract for the purchase thereof, falsely stated or misrepresented as existing facts (with any intention of deceiving said plaintiffs) the facts alleged in the complaint. Here the finding sets forth categorically the representations alleged to have been made. That it is not true that each and every, or any of the statements and representations made by the said C. A. Campbell were false, nor that they were known by said C. A. Campbell at the time to have been false, nor that the said C. A. Campbell made statements as false or fraudulent statements or misrepresentations in order to cheat or wrong the plaintiffs, or to induce them to enter into said contract, or otherwise. The court further finds that no false or frauduluent representations were made by the defendants, or either of them, or Deeble and Myers or by C. A. Campbell, either as alleged in plaintiffs' complaint, or at all, and further that no false or fraudulent representations were made by the defendants or by Deeble and Myers or by C. A. Campbell either for the purpose of defrauding the plaintiffs or of inducing them to purchase the property involved (describing the same) or inducing them to enter into said written contract for the purchase thereof; and that plaintiffs purchased said property and executed the said contract of their own free will and accord and without any inducement through any fraud, either as alleged in plaintiffs' complaint or otherwise or at all. That it is not true that the plaintiffs on or about June, 1927, or at any other time, discovered any facts which entitled them to rescind said contract, nor that plaintiffs, upon discovery of any facts which they believed or were informed entitled them to rescind said contract, promptly made any rescission of said contract or upon being advised by an attorney as to the necessary basis for a rescission either promptly or at all caused to be delivered to defendants any sufficient notice of rescission and/or offered to restore to defendants everything of value received by plaintiffs. That it is not true that the plaintiffs were without

knowledge of the things stated in the complaint; nor that plaintiffs believed said statements and/or representations or relied thereon; that it is not true that plaintiffs, believing and/or relying on said alleged statements or representations entered into a contract for the purchase of the property described. That it is not true that at all times mentioned in plaintiffs' complaint the market value of the property was much less than four thousand four hundred dollars, or that plaintiffs were damaged by reason of any statements or representations, false or otherwise. As hereinbefore stated, the attack of plaintiffs on these findings is both specific and general. Every phrase of the findings is taken up separately and analyzed and conclusion being reached agreeable to plaintiffs' contention, with respect to one detached phrase this forms the groundwork for attack upon another part of the findings. And so on throughout the entire list. For instance it is first urged that the finding that no false or fraudulent representations were made to induce plaintiffs to enter into the contract is pregnant with the finding that such representations were made for some other purpose. That therefore the subsequent finding that no false or fraudulent representations were made is in conflict. And finally it is contended that when the court finds that no false representations were ever made it does not find whether or not untrue representations were made; the basis of this argument being that in as far as falsity of a statement implies a wilful intent to deceive, a representation may be untrue and yet not be false. To follow through the contentions of appellant would require almost a treatise on philosophy, logic, grammar and punctuation. From the older decisions abundant and respectable authority is cited which in a measure supports the appellants' claims. It must be conceded, however, that we have passed through the period of these decisions and have emerged into the more open field where the main purpose of findings (and a large portion of the bench and bar but grudgingly admit that findings serve any purpose) is to indicate the decision of the court upon the material issues sufficient to support the judgment. ■ The findings are to be liberally construed and are to be construed as a whole and where conflicts seem to be present these are to be reconciled if possible with other findings to the end that the judgment may be

supported, if reasonably possible so to do. In the case of *Berry* v. *Crowell*, 55 Cal. App. 534, 537 [203 Pac. 835, 836], it is said: "If sufficient can be gathered from the whole of the findings of the court that material issues are fairly determined, the finding will support the judgment. 'It was not necessary that the facts as found should be in any particular form or follow the pleadings. If the truth or falsity of each material allegation in issue can be demonstrated from the findings, the law is complied with.'" And in *American Nat. Bank* v. *Donnellan*, 170 Cal. 9, 15 [Ann. Cas. 1917C, 744, 148 Pac. 188], we find the following: " . . . however unsupported, however lame, however inconclusive, any number of the findings may be, if in any case there be one clear, sustained and sufficient finding upon which the judgment may rest, every presumption being in favor of the judgment, it will be here concluded that the court did rest its judgment upon that finding, or those findings, and the others may and will be disregarded." (See, also, cases referred to in the opinion as cited and also the cases of *Klegman* v. *Moyer*, 91 Cal. App. 333, 346 [266 Pac. 1009], and *Hulen* v. *Stuart*, 191 Cal. 562, 571 [217 Pac. 750].) ■ Without further analysis of each finding or discussion of the objections raised thereto we conclude, under the principles laid down in the cited cases, that the findings are sufficient to support the judgment.

■ Appellants next contend that the court failed to find on certain material issues. Appellants again review the findings and call specific attention to the detailed representations alleged to have been made and complain of the lack of a finding as to each. The court did find, as hereinbefore shown, that the specific representations were not made as alleged in the complaint and that no misrepresentations or false representations of any kind were made as stated or otherwise. Without repeating we deem the findings covered the requirements. ■ Next are a series of allegations and denials upon which finding is alleged to be lacking. While these specifications of omission are not wholly in accord with the record the fact remains that even if appellants are correct in their contention that certain other material issues are without finding we hold, under the authorities hereinbefore cited, that sufficient was found to sustain the judgment. And illustrating, the lack of a find-

ing on the issue of the sufficiency or promptness of the alleged rescission or the lack of a finding on the agential capacity of the salesman became of no moment after it was found that there were insufficient facts upon which to base a rescission and that the alleged agent never made any untrue or false representations. (*Sharp* v. *Pitman,* 166 Cal. 501 [137 Pac. 234].)

The next argument advanced by appellants is that the findings are not supported by the evidence. This opens up a wide field of inquiry. At the outset it may be well, perhaps at the expense of repetition, to note that the pleadings present many issues and that if it should happen that findings on some issues lack evidentiary support, nevertheless if the remaining findings, amply supported, support the judgment, then under the case of *Sharp* v. *Pittman, supra,* and the general rule in accord therewith, it becomes immaterial whether or not the other findings are discarded or accepted. And again, in approaching the inquiry as to the sufficiency of the evidence to supprt any finding, it is a fundamental rule of appellate practice that we will not attempt to solve again any conflicts in the testimony, but will accept as final the conclusion of the trial court where we find evidence supporting the same, regardless of the fact that much evidence might be opposed thereto. Repeating, there were many issues and many phases of the case. There was the issue of fraud as involved in the alleged representations inducing the contract; there was the question of knowledge on the part of plaintiffs respecting the facts represented and the opportunities of investigation. Likewise the matter of investigation, independent of the representations. And, aside from these considerations, there was the issue of promptness of rescission after knowledge of facts and the manner of rescission. It might well be that the trial court's finding on fraud was correct and its finding on reliance thereon incorrect without affecting the judgment, and this same situation might exist with reference to any of the findings. Yet, if the finding that there was no fraud or misrepresentation and that the contract was freely entered into were the correct finding or at least a finding supported by the evidence, then it would be manifest that there was, in the present case, no grounds for rescission and the mode of attempted rescission or its sufficiency would be

wholly immaterial. We are not inclined to discuss minutely each finding and the details supporting the same. We have carefully read the record presented and we conclude that the findings have ample support. As a background of the entire case its general outline may be sketched. While the executed contract is in the name of both of the plaintiffs the actual negotiations were by the plaintiff Willard C. Warner. He was a man of wide business experience and acquainted with real estate in southern California and in the vicinity wherein the land in question is located. He, on his own initiative, sought out the tract and began without solicitation his inquiry as to the merits of the investment. After executing the contract and before any payments thereunder he had become doubtful as to whether he should proceed further, expressing the thought, not that he had been defrauded, but that at his age the returns might be slow in materializing. In his attempt at withdrawal or expression of desire to that end, and after all of the alleged representations had been made he wrote a letter to defendants expressing no dissatisfaction and questioning but one representation, namely as to the construction of a street or boulevard. Plaintiffs then, almost a year before the rescission, consulted an attorney, denying this until confronted with written proof. Notwithstanding this examination and their claimed suspicions no action was taken until almost a year thereafter. Incidentally, it appeared that at the time of consulting the attorney they were advised that their only way out was to prove misrepresentations. With this background and the veracity of plaintiffs impeached it is not difficult to infer that the trial court looked with some distrust upon the entire testimony of plaintiffs and from this viewpoint it took perhaps less evidence on the part of the defendants. The court below had the witnesses before it and there was available to that court an opportunity to find the truth that is not nor cannot be presented to us. So, therefore, while there may be a finding where from the mere record a contrary conclusion would appear to have more support, we deem the inquiry closed upon discovery of the slightest real conflict in the evidence. Without further discussion we hold that sufficient evidence supports findings ample to sustain the judgment.

■ Finally appellants urge errors committed by the trial court in its rulings upon the admission or rejection of evidence as grounds for reversal. There are some seventy-two specifications of error set forth. We have gone over these one by one and find no sufficient reason for disturbing the judgment. It must always be remembered that error constituting ground for reversal must be shown to be prejudicial to an extent resulting in a miscarriage of justice. Errors such as alleged here could have no such effect if every specification were well founded. A detailed discussion of each specification of error would almost necessarily demand a detailed analysis of all of the testimony from each point of attack. For instance, it might well be that evidence rejected was admissible and yet the record discloses that the same evidence was received at some other stage of the proceeding and from the same witness. And likewise where error is alleged, as here, in the rejection of testimony sought to be adduced on the ground that the questions eliciting such testimony were leading, it would seem almost obvious that after an objection is sustained to a question as being leading the purpose of suggestion has been accomplished and it is rarely that the complaining party is unable to elicit the same testimony by proper question. We have, as indicated, noted carefully the errors complained of and repeat that none of them nor all of them would constitute a compelling basis for a reversal. We find, however, that there is some merit in but a few of these specifications. On the whole the rulings of the trial court were correct. The few errors, which might be conceded, were not prejudicial to an extent warranting our interference with the judgment.

Lest this be deemed a too summary mode of disposing of the claims of the appellants we will, in conclusion, note another feature of the case which might indicate that the appeal has received more consideration that it warranted. The contract contains a clause reading as follows: "It is understood and agreed that the property above described has been inspected by the buyer or the buyer's duly authorized agent and that the buyer has contracted to purchase the property covered by this contract by reason of the buyer's own knowledge thereof and not upon, or by reason of, any representations made by said seller or any selling

agent, and said buyer hereby waives any and all claim for damages because of any representation made by any selling agent or person whatsoever other than what is contained in this contract and the said seller shall not in any way be responsible or liable for any inducement, promise, representation, agreement, condition or stipulation not set forth therein.'' It seems that this provision is not lacking in clarity. There is nothing before us to indicate that the buyer, plaintiffs, did not or should not have read the contract before signing; nor is there evidence that the physical execution was procured or induced by fraud or design. All that the record can disclose is that the execution of the contract, as far as physical execution goes, was admittedly the free and presumed intelligent act of the buyers. In *Gridley* v. *Tilson*, 202 Cal. 748, 751 [262 Pac. 322], it is said: ''While the Civil Code, section 1625, provides that a written contract supersedes all negotiations concerning the matter between the parties, it has always been the law that fraud in the inducement of a contract may be shown. A well-settled exception, however, is the case where the party seeking to rely on fraudulent representations of an agent had notice of the limitation on the agent's authority to make representations. Therefore a principal is bound only by the representations embodied in the written contract where a provision in the contract notified the prospective purchaser that the agent's authority went no further.'' And the court goes further in commenting upon the proffered excuse as to why the contract, in the cited case, was not read. In this connection it says: ''But this cannot afford him an excuse in the absence of a showing that he was prevented by the agent from reading the limiting clause or was otherwise tricked into signing the document without reading it.'' Many authorities are cited in support of the rule thus declared. In the instant case the fraudulent representations are charged to the selling agent and there is nothing to take the case out of the rule. The language employed might not, in every conceivable case, protect the seller. This we do not decide. Fraud manifests itself in various and varied forms, and it might be that a case could be made wherein a sufficient showing of hardship and oppression might be made to limit this rule within confines compatible with the ever-existing purpose of the law, namely the pres-

ervation of justice. Yet, in the absence of any peculiar showing, the wording of the contract cannot be ignored entirely. Much of modern business is done through some form of agency and if there were no way in which a principal, himself without fault, could be apprised of the integrity and finality of his contract we fear that an unhappy condition of insecurity would result. ■ The buyer and the seller here were dealing at arm's length and when the latter so plainly informed the former that his contract was based only upon the express conditions thereof and disclaimed responsibility for anything beyond the writing and the buyer thereupon acquiesced, it follows that the contract as thus made was the measure of the liability of the parties thereto.

The judgment is affirmed.

Spence, Acting P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 29, 1931, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 28, 1931.