[Civ. No. 3175. Fourth Dist. May 4, 1945.]

ALYCE A. BLAND, an Incompetent Person, etc., Respondent, v. EDNA D. KELLEY, Appellant.

W. C. Tupper and Gerald H. Catania for Appellant.

Edmond A. Chevalier and Martin C. Thuesen for Respondent.

MARKS, J.—This is an appeal by defendant from a judgment cancelling a contract, deed and bill of sale, executed by plaintiff on August 26, 1943, and allowing defendant $60 per month for services rendered to plaintiff for one year prior to July 8, 1944, the date of the judgment.

Plaintiff was an elderly woman. She was ill and confined to her bed and, as found by the trial court, "that on or about the 26th day of August, 1943, and for a long time before, the said Alyce A. Bland was an incompetent person, of feeble understanding, in ill health, and was living alone, remote from friends or relatives and in a state of great mental depression and despondency."

Defendant described herself as a minister and practitioner of the Universal Educational Religious Society of Divine Science. Defendant became acquainted with plaintiff and made frequent calls upon her, read from the Bible to her and otherwise administered to her spiritual and physical welfare. When defendant called on plaintiff the two were always alone and behind closed doors.

Plaintiff owned a dwelling at 1041 "T" Street in Fresno. It was rented to various tenants and produced a monthly income of more than $235 per month. In August, 1943, the property had a market value of $9,000 and was encumbered with a deed of trust upon which there was an unpaid balance of $3,766.01, payable in instalments of $50 per month. Plaintiff owed a local bank $69.

On August 26, 1943, plaintiff signed a deed conveying the real property to defendant, and a bill of sale transferring

the household furnishings to her. The two parties also executed a contract which recited that plaintiff was "very ill and almost helpless and confined to her bed most of the time" and needed someone to care for her and her property; that the deed and bill of sale were executed in consideration for the past services of defendant to plaintiff "and further on the understanding and agreement between them that the said party of the second part (defendant) will, in the future, and during the life of the said party of the *second* part, continue to take care of the party of the first part, giving her every possible care and attention; also looking after the household and tenants and in every way making her life more pleasant and endurable."

Immediately after the execution of these documents defendant had plaintiff moved to a rest home, defendant paying $65. As plaintiff remained there only five days, $54 was refunded to defendant who had plaintiff removed to defendant's home where she remained ten days. Defendant employed a woman to care for plaintiff and paid her $60 for this service, besides furnishing plaintiff with a room and meals. On September 10, 1943, defendant had plaintiff moved to the Fresno County Hospital where she has remained ever since at public expense. Defendant has neither paid nor offered to pay any part of the cost of maintaining plaintiff in the county hospital.

There is ample evidence in the record to support the finding of the physical and mental weakness of plaintiff. Several of her friends testified to such facts. Dr. Max Levisohn examined her first about September 10, 1943, and diagnosed her disease as "Paralysis agitans, Parkinson Syndrome." He described it as an "Arteriosclerotic change inside of the skull . . . with a slow down in physical and mental activities." He testified that patients suffering from that disease are "quite suggestible," that is, easily influenced to follow the suggestions of others.

The trial court found that the documents in question were executed under mutual mistake of both parties. This finding is fully supported by the testimony of plaintiff and defendant. Plaintiff testified that she did not read the documents because she did not have glasses; that they were not read to her; that she was led to believe that she was signing instruments giving defendant security for any money expended in the care of plaintiff; that she did not know she was

conveying her property to defendant and would not have signed the documents had she known their true import.

Defendant testified that she did not understand she was personally obligated to provide care for plaintiff beyond the income provided by the property; that her understanding was that she could use the income to pay the instalments on the encumbrance and to provide plaintiff with such care as defendant thought necessary.

It is clear there was no meeting of the minds of the parties and that the documents did not carry out the intention of either of them.

The evidence is sufficient to sustain the finding of mutual mistake of fact under the holding in the case of *Moore* v. *Copp*, 119 Cal. 429 [51 P. 630].

■ The trial court also found a failure of consideration. The evidence we have already outlined clearly supports this finding. Defendant only cared for plaintiff for fifteen days and then had her sent to the county hospital where she remained as a public charge. The judgment makes ample provision for repayment to defendant of all money spent by her and ample payment for any services rendered to plaintiff.

The evidence supports the findings and the findings support the judgment.

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 2, 1945.