[Civ. No. 16664. First Dist., Div. Two. Apr. 19, 1956.]

HELEN WRIGHT, Respondent, v. FLOYD LOWE et al., Defendants; GEORGE M. DUTCH, Appellant.

Leon E. Shiells, John D. Jorgenson and Mack, Wilson & Jorgenson for Appellant.

John J. Taheny, Jr., and John J. Taheny for Respondent.

DEVINE, J. pro tem.*—Judgment allowing rescission of a contract of sale of real property and cancellation of a deed

*Assigned by Chairman of Judicial Council.

having been rendered in favor of plaintiff, the vendor, defendant, the buyer, has appealed.

Plaintiff, Mrs. Wright, was the owner of several lots on which there were dilapidated houses, in Palo Alto. Street and sewer assessments had been levied against the property, and at the time of the sale in question, these amounted to almost $8,000. The assessments were a lien on the property, but they were payable over a term of many years, an instalment being collected annually with the taxes. Mrs. Wright testified she did not know of the assessments. There were deeds of trust on the property of which she was fully cognizant. These, at the time of the sale, secured bank loans of about $2,800.

In 1952, Mrs. Wright decided to sell the property. A broker's salesman named Brown heard of her wish, and obtained authorization to sell, at first at the price of $15,000 and later at $10,000. These authorizations were in writing, but the documents were not offered in evidence. Appellant Dutch, who is an investor in real estate, had been in contact with Brown about acquiring the property. Dutch offered $11,000 originally, but when he received a preliminary title report which disclosed that the bank loans and assessments would exceed that amount, he voluntarily increased his offer to $12,200, which was $700 above the price Brown had quoted to him. There is nothing in the record to show that Dutch personally used deception on plaintiff, nor that Lowe, the broker for whom Brown worked, did so.

The street and sanitory assessments are the crux of the case. Dutch, on his part, intended that the amount of these should be deducted from the purchase price. Mrs. Wright, as she testified and as the court believed, did not know of the assessments and had no idea that the large amount of these would be deducted from the purchase price.

It is necessary to describe the history of the transaction as it relates to the dealings of Mrs. Wright and Brown. She has had an education which did not go beyond the third grade. Brown asked her if she would be willing to accept $1,000 down and $100 a month, and she assented, telling Brown that she wished to make a down payment on a small apartment house. She does not find fault with the $12,200 price as such, but with the deduction of the amount of the assessments, a subject on which, she claims, she was mistaken. Brown testified that he explained to her that she would receive perhaps $500 or $600 less his commission which he reduced to $450.

She denies that any such explanation was given to her, and the trial court accepted her testimony as true.

The results of the sale are startling. The total of assessments, bank loans, taxes, commission and closing expenses were such that Mrs. Wright received nothing at all for her property. Several charges which Dutch had agreed to pay were made against Mrs. Wright. She would have had $198 net to her, but a demand from a bank came in just before the closing, and was honored by the title company, so that Mrs. Wright's realization from the sale would have been an algebraic quantity of minus about $130. The deficiency, however, was cancelled by the title company, and Mrs. Wright was informed, when she asked for her check, that there was nothing owing to her.

That there was copious evidence for the court to find that plaintiff made the sale under mistake is not disputed by the appellant. His contention is that the court allowed rescission on the ground of mutual mistake and that there was no mutuality of mistake because he, Dutch, was not mistaken about the terms of the contract.

 This reasoning, however, must be based on the premise that the written contract between the parties entitled ''deposit receipt'' is in itself a clear expression of terms, which coincides with the subjective intent of Dutch. Actually, it is, as the trial court found it to be, an ambiguous instrument. It is not for one party, then, to assert that there was not mutuality of mistake simply because his intent agrees with what he thought the contract said. The written contract, in fact, not only admits of two interpretations, one favorable to the seller and one to the buyer, but it may well be that if the contract alone were before us on a question of construction rather than of rescission, the preferred interpretation would be against the buyer, especially because he dictated the terms. (Civ. Code § 1654.) In the contract, the buyer agrees to ''assume'' the assessments, and the property as delivered is to be free of assessments. To ''assume'' ordinarily means ''to pay.'' (Words and Phrases, perm. ed., vol. 4, p. 585; *Klegman* v. *Moyer*, 91 Cal.App. 333, 339 [266 P. 1009].) Dutch concedes that he did not intend to pay the assessments at the time, nor to accept any personal liability for them, but simply to let them remain. He concedes that he did not intend that the property should come to him, as the deposit slip says it shall, unencumbered

by assessments. ■ All this leads up to the question, what was meant by the word "balance," in the sentence of the contract reading: "Buyer agrees to assume existing loans and assessments and pay balance in cash."? The buyer would have it that this means he agreed to pay something which might have been expressed, but was not, like this: "the balance after deducting from the purchase price of $12,200.00 the sum of existing loans, and street and sanitary assessments." Dutch was mistaken in believing the written contract did so provide; Mrs. Wright was mistaken in having no understanding of the deduction, contemplated by Dutch, of the amount of the assessments. The mistake was mutual and related to the same subject matter. The parties did not agree to the same thing in the same sense, and consent was not mutual. (Civ. Code § 1580.) To avoid an obvious injustice, rescission and cancellation properly were decreed. (*Moore* v. *Copp,* 119 Cal. 429 [51 P. 630]; *Security T. & S. Bank* v. *Southern Pac. Co.,* 214 Cal. 81, 85 [3 P.2d 1015]; *Bland* v. *Kelley,* 69 Cal.App.2d 116, 117 [158 P.2d 206].)

There was another document signed by the seller, namely, instructions to the title company, which we do not regard as curing the defect of the deposit receipt which was the basic instrument. The instructions are described following a consideration of the problem of agency. The question at this point is whose agent Brown was. The trial court found him to be the agent of Dutch for the purpose of presenting to Mrs. Wright his offer to buy. We believe this finding should be sustained.

■ Mrs. Wright's authorization to Brown was at most that of selling at the sum of $10,000. This would not authorize him to accept Dutch's offer with its deduction provisions (*Holbrook* v. *McCarthy,* 61 Cal. 216; *Stemler* v. *Bass,* 153 Cal. 791, 795 [96 P. 809]), nor did it make Brown solely her agent for bringing Dutch's new effort back to her.

■ Agency generally is a question of fact. (*Brokaw* v. *Black-Foxe Military Institute,* 37 Cal.2d 274, 278 [231 P.2d 816].) ■ An implied agency may arise from the words and conduct of the parties and the circumstances of the particular case. (*Ferroni* v. *Pacific Finance Corp.,* 21 Cal.2d 773, 779 [135 P.2d 569].) ■ It was Dutch who dictated the terms of his offer to Brown for communication to Mrs. Wright. None of these terms was at her suggestion. The whole plan by which Dutch intended, as he testified, to

acquire the property for a low down payment, by the deductions above described, originated with Dutch. His was not an acceptance, but a new offer, and Brown was his agent in transmitting it.

The fact that a broker's commission is paid by one party does not necessarily make him the exclusive agent of that party. (*Stephens* v. *Ahrens*, 179 Cal. 743, 746 [178 P. 863] ; *Sands* v. *Eagle Oil & Refining Co.*, 83 Cal.App.2d 312, 318 [188 P.2d 782].) In any event, it is almost fictitious to say that the seller paid the commission in this case. It was paid from the relatively small amount of $1,627.89 which was deposited by the buyer and of which the seller received nothing. Besides, in the buyer's instructions to the title company, he specifically authorized the use of his money to pay the broker's fee, and this authorization appears among the charges for which he was liable. Nor do we regard the statement signed by the seller, on the deposit receipt, referring to the broker as ''employed by me'' as controlling. These words are contained in that part of the document relating to the broker's commission, a part separated from that containing the terms of sale between the seller and the buyer.

The trial court's finding, justified, as we find it to be, that Brown was Dutch's agent for the purpose of communicating his offer, has two effects. First, it makes more readily excusable Mrs. Wright's failure to understand or even to read, the deposit receipt or instructions to the title company, for Brown being Dutch's rather than her agent for the purpose of transmitting the offer, she is not chargeable, as appellant argues, with the faulty explanation by Brown. Whether or not failure to read a document is such negligence as to preclude relief is ordinarily a question of fact, and this is particularly true where the failure to read is induced by reliance on the misrepresentation of the other party or of his agent. (*Moore* v. *Copp*, 119 Cal. 429 [51 P. 630] ; *Security-First Nat. Bank* v. *Earp*, 19 Cal.2d 774 [122 P.2d 900] ; *C.I.T. Corp.* v. *Panac*, 25 Cal.2d 547, 560 [154 P.2d 710, 160 A.L.R. 1285] ; *Kantlehner* v. *Bisceglia*, 102 Cal. App.2d 1, 3 [226 P.2d 636].) The same rule holds where the agent is the agent for both parties. (*Feckenscher* v. *Gamble*, 12 Cal.2d 482 [85 P.2d 885].)

The second effect of the finding on agency is this: even if the mistake in the case were that of Mrs. Wright alone,

as appellant contends it was, rescission would be allowable. That would be so even granting further a proposition of law which appellant contends for, but which we need not decide, that in cases of unilateral mistake, some consciousness of the mistake must exist in the mind of the party against whom the rescission is sought. That the deduction of assessments would be made was a mistake of fact, even though it derived from a written contract. (*Rued* v. *Cooper*, 119 Cal. 463, 468 [51 P. 704].)

There was not only awareness of the mistake by Brown but a fraudulent representation and, he being Dutch's agent at the time of negotiating Dutch's offer into acceptance by Mrs. Wright, Dutch is to be charged with Brown's acts and omissions. The mistake was a basic one, and to allow the contract to stand would be to confirm an injustice.

Under all the circumstances of the case, the judgment of rescission is to be affirmed whether the mistake was mutual or unilateral. (Civ. Code, § 1689; *Moore* v. *Copp, supra*; *M. F. Kemper Const. Co.* v. *City of Los Angeles*, 37 Cal.2d 696, 701 [235 P.2d 7].)

Finally, it is the contention of Dutch that if the judgment of rescission is allowed to stand, at least there should be reimbursement allowed him for his efforts in persuading the planning commission to rezone the property which, he claims, enhanced its value. He was allowed $275 for work he did in preparing maps. He was not allowed a share in the asserted increase in value because of the rezoning. The court may require the party to whom rescission is allowed to make any compensation to the other which justice may require. (Civ. Code, § 3408.) No authority has been cited wherein increment in value because of the efforts of the party against whom rescission was had, was allowed; but assuming that it is permissible, the imposing of conditions is largely within the discretion of the trial judge. (*Utemark* v. *Samuel*, 118 Cal.App.2d 313, 318 [257 P.2d 656].) Considering all the circumstances of the case, the trial court acted well within its discretion, in denying compensation for the rezoning, whether such compensation was on the basis of increase in value or on the basis of effort to obtain the rezoning.

The judgment is affirmed.

Dooling, Acting P. J., and Kaufman, J., concurred.